**GAY v. STONE & WEBSTER ENGINEER-ING CORPORATION et al.**

**No. 2036.**

Court of Appeal of Louisiana. First Circuit.

Nov. 9, 1939.

Taylor, Porter & Brooks, of Baton Rouge, for appellants.

Durrett & Hardin, of Baton Rouge, for appellee.

Le BLANC, Judge.

This is a suit brought under the provisions of the Workmen's Compensation Law of this State, Act No. 20 of 1914, and its amendments, in which the plaintiff, formerly employed by the defendant, Stone and Webster Engineering Corporation, seeks to recover compensation at the rate of $20 per week for a period not to exceed four hundred weeks and medical expenses in the sum of $250. In his petition he represents that the Royal Indemnity Company, a foreign insurance corporation, carried compensation insurance for his employer at the time that he sustained the accidental injury for which he seeks to recover compensation, and he accordingly asks that it be made party defendant also, and that it be cast in solido in the judgment prayed for.

He sets out that he was employed as a pipe-fitter's helper and was, on October 11, 1938, at work on a job inside of a boiler; that he had to get out of the boiler to go' and get additional tools and that in doing so he struck his right knee on a ring or some other metallic object attached to the boiler. He alleges that his knee was severely bruised and although it pained him he continued to work that day and returned on the job and worked until noon, October 13, 1938, when the pain and swelling became so intense he was forced to leave. He avers that at that time he showed his injured knee to the timekeeper on the job and he was immediately sent by him to Dr. J. Webb McGehee for treatment. He recites the treatment and medical examinations and care by other doctors in spite of all of which he remains totally unable to perform manual labor of any reasonable character, the only kind of work he ever was trained to do. He alleges that he was paid at the rate of 65¢ per hour, never less than eight hours per day and that a regular working week consists of six days. He also avers that considering his regular work and the over-time he made his weekly wages under the contract of hiring at the time of his injury amounted during some weeks to more than $35 and that for one week he was paid as much as $37.29.

The two defendants filed a joint answer in which it is denied that plaintiff suffered any accidental injury but during the trial of the case, by a stipulation found in the

note of evidence, without admitting that he is presently disabled, it was admitted by counsel for defendants that an accident as alleged in plaintiff's petition had happened. The two defenses now presented are with regard to the cause of the disability claimed and the weekly rate of pay. One of the contentions now made is that the period of disability from the accidental injury was no longer than eight weeks and that if it still persists it is due to disuse caused by the leg having been put in a plaster cast which was not the proper treatment and for which defendants are not liable. The other is that plaintiff was employed on the basis of a five day week and not six and at his rate of pay he earned $26 weekly, 65% of which is $16.90 and that is the maximum amount of compensation he is entitled to recover per week during the period of disability.

The district judge agreed with this last contention of the defendants but he held that plaintiff's present disability was caused through no fault of his own and that he was therefore entitled to recover compensation. He would not assume the responsibility, under what testimony he had before him, to fix the period of disability but as he did not believe it would be permanent, he allowed compensation at the rate of $16.90 per week not to exceed three hundred weeks.

Defendants have appealed and plaintiff has answered the appeal asking that the judgment be amended by increasing the rate of compensation to $20 per week and by extending the period to four hundred weeks.

We will take up for consideration the point involved in the answer to the appeal with regard to the weekly rate of compensation. It seems that to support the demand for an amendment to the judgment in that respect, counsel for plaintiff rely particularly on a recent decision of this court in the case of Ricks v. Crowell & Spencer Lumber Company, Inc., La.App., 189 So. 466, in which they say that the court was presented with the identical situation found here. They further state that had that case been reported at the time the district judge decided this case they feel certain he would have followed it and awarded compensation at $20 per week based on a six day work week.

■■ An important and controlling difference in the two cases is that in the former, the employee was hired to work by the day with no reference whatever to the number of days or hours of work he was to perform per week, whereas in this case, the employee himself held a work card bearing his own signature on which his rate of pay was stated as being 65¢ per hour based on a forty hour week and by his own testimony it is shown that the forty hours were divided so as to make five work days per week. His card shows moreover that during the period of his employment covering six weeks he never worked more than five days except once and on that occasion, which was on a Sunday night, six weeks before he was injured, he was paid over-time for the extra work he did. In the Ricks case we held that the evidence did not show even a tacit understanding by the employee that a five day work week was ever intended whereas here it strikes us that the plaintiff, by accepting his work card specifying his rate of pay and the number of hours he was to work, and by his own testimony that he worked eight hours per day for five days a week in order to make his forty hours, definitely understood the agreement under which he was employed. Taking his whole period of employment during which he followed those hours regularly with only one exception, it would seem more reasonable and logical to say that those hours constituted his contract of hiring than to pick out the one exception referred to, to hold that the contract contemplated six days work per week. It is the contract of hiring in force at the time of the injury and under which the employee was recompensed which serves as the guide in fixing his wages in order to arrive at the compensation he is entitled to, (Subsection 3, Section 8, Act 20 of 1914, as amended) and using that guide in this case we believe that the rate of compensation was properly based on a five day work week in the judgment appealed from.

On the other point involved, that is the cause of plaintiff's present disability, we again find ourselves in accord with the views expressed by the learned district judge and the conclusion he reached.

We deem it unnecessary to go into any lengthy discussion of the medical testimony concerning the nature of plaintiff's injury. Dr. McGehee to whom he was first sent treated him by removing a sero-sanguinous fluid from his knee and ordering rest in bed. Plaintiff developed fever and was sent to the Baton General Hospital where he remained ten days during which time

pus .was removed from his knee and heat treatments applied. He was treated two weeks longer at home, dressings were applied until November 20, 1938 when Dr. McGehee thought he had improved enough to be able soon to return to work. He told him to come see him in five days but instead, plaintiff not satisfied with the progress he was making, consulted Dr. Thomas Y. Gladney who was associated with Dr. T. Spec Jones. These doctors thought it proper in treating plaintiff to put his leg in a plaster cast and from this course of treatment arises the difference in opinion among the many doctors who testify regarding the cause of the disability which existed at the time of the trial.

■ Some of the doctors doubt that the application of the plaster cast was necessary or proper and are of the opinion that by thus immobilizing the leg, recovery was retarded; that the limitation in flexion which remained was due to failure to exercise and use his leg rather than to plaintiff's injury. Be all that as it may there was certainly nothing whatever in all the testimony to indicate that the plaintiff failed to cooperate with any of the doctors who examined or treated his injury. On the contrary he seems to have submitted to all treatment and was doing all that he was told to do to get well. Conceding that the immobilization of his leg did have the effect of prolonging his disability, which is a disputed question, he cannot under the circumstances shown be held responsible therefor.

■ On the question of the nature of his injury and the probable duration of disability we find it impossible to arrive at any definite conclusion with what testimony there is before us, and to say with any degree of certainty when plaintiff will have recovered the full use of his leg so as to be able to resume his work. We agree with the trial judge that his disability will not be permanent. Only one medical expert, Dr. A. S. Tomb, who did not have the same opportunity of observation and examination as the others, seems to think that there is some internal injury in the knee joint. All the others are of the opinion that he will eventually recover and regain the full use of his leg. When that time will be however is still a matter of conjecture based on opinions which greatly vary. The district judge therefore was correct in not wanting to assume the responsibility of fixing that time. Whenever it will definitely appear that plaintiff has fully recovered, defendants can avail themselves of the right afforded them under the statute to present that matter to the court and obtain relief from further payments of compensation.

We are unable to find any error in the judgment appealed from and it is therefore affirmed at the costs of the defendants.