Plaintiff is an uneducated negro man and at the time he was injured in the accident hereinafter discussed, was thirty-eight years old. He earned a livelihood from manual labor only and for several years prior to being injured on July 3, 1939, specialized in the job of hooking heavy metal tongs at the end of a cable hanging from a traveling crane, to logs preparatory to transferring them from the mill yard or flat cars to a carrier or elsewhere. While so engaged on said date, as an employee of the defendant sawmill company, a log fell upon his left ankle, inflicting a compound fracture thereof, including a fracture of the lower end of the fibula, the small bone that extends from the knee to the ankle joint. He was treated by Dr. D.H. Allen, the company's retained physician, for three days and on July 6th was carried to the Vicksburg Hospital and Clinic, Vicksburg, Mississippi, for hospitalization. An operation was there performed by Dr. W.H. Parsons, chief surgeon. He was a patient of that institution until September 22d, on which date he was discharged. Dr. Allen resumed treatment of him from that time until October 20th. The wound did not improve as rapidly as was expected and he was again admitted to the hospital on November 1st, for further treatment, and remained therein until November 14th when he was again discharged. *Page 827 
It was found on plaintiff's first admission to the hospital that the bones in and about the ankle joint were infected. The lower end of the fibula was removed and later a skin graft was done to close the raw area. As a result of the trauma and the operation the ankle joint became ankylosed, which means that it is no longer mobile; it is void of flexion.
Recognizing the disabling character of plaintiff's injuries, defendant paid him compensation at the rate of $7.15 per week (sixty-five per cent of his weekly wage) until December 13, 1941, a period of 126 weeks, and thereafter ceased such payments, being of the belief that the disability no longer existed and that his physical condition was such as to enable him to perform manual labor. This suit followed. Plaintiff sued to recover compensation at the rate mentioned for 400 weeks, less payments previously made, on the theory that his disability is permanently total. He also sued to recover $250 medical, physicians' and hospital expenses.
Defendant denies that plaintiff is now or has been since December 13, 1941, disabled to perform manual labor of which he is capable, but, on the contrary, affirms his ability to do so.
The lower court reached the conclusion that plaintiff's ankle rendered him totally incapable of hard work but found that the disability was only temporary. Compensation for 200 weeks, less payments made, was awarded him. He appealed, and complains of the judgment in so far as it holds that his disability is only temporary. Defendant did not appeal nor did it answer appellant's appeal. Therefore, the judgment may not be amended in its favor, notwithstanding, in brief, it is argued and urged that plaintiff has been paid all compensation due him. Code of Practice, Article 592. See also Giardina v. D'Antoni, La.App., 1 So.2d 706, and cases therein cited; Nurdin v. Bouanchaud, Sheriff et al.,152 La. 853, 94 So. 420; State v. Becker, 30 La.Ann. 682, in which it was held: "Any change in the judgment of the lower court, desired by the appellee, must be asked for by him in a regular answer to the appeal. It is not sufficient to demand it merely in his brief."
In view of the situation being as above narrated, this appeal tenders but one issue and that relates to the duration or probable duration of the disability which afflicted plaintiff at the date of trial. In other words, is it temporary or permanent within the meaning and intendment of the Workmen's Compensation Law?
The lower court in fixing the term of compensation payments availed itself of subsection 8 of Section 8 of Act No. 20 of 1914, as amended, Act No. 242 of 1928, p. 362, which reads as follows: "For injury producing temporary total or temporary partial disability the Court, may in its discretion, award compensation for a fixed number of weeks to be based upon the probable duration of such disability."
Four physicians testified in the case; two for each side. All agree that the ankylosed ankle joint, if and when free of pain, will not prevent plaintiff from performing manual labor of various kinds, but they concede that he will not be as agile in work requiring active use of the left foot as he was prior to the injury; for instance, the hooking of logs in the manner as when injured.
Plaintiff testified that the ankle pains him continuously and that the pain is intensified after the left leg and foot have borne their proportion of his weight for a considerable length of time; that such increase in pain prevents him from performing any work requiring the continuous use of the leg and foot. His weight at time of trial (January 20, 1943) was twenty pounds less than when the accident occurred.
He also testified that he procured light work two or three times but had to quit in each instance as the joint would swell and the pains would become severe; that he was refused employment more than once when his injured ankle was examined by representatives of his prospective employers. No attempt was made to disprove this testimony.
Plaintiff's medical witnesses agree with him in his assertions of pain and attribute it to the swollen condition in and about the joint. Defendant's doctors testified that the joint is well healed; that it does not materially interfere with his ability to perform manual labor. It is their opinion that plaintiff is not sincere in saying the joint pains him, but they admit that such a symptom in a case of this character is entirely possible; also, that when a person claims to have pain in a certain part of his body, it cannot, as a rule, be positively disproved. They further say that if no clinical reason for the existence of the pain *Page 828 
can be found, it is then concluded that none exists. This is what they did in this instance.
The trial judge observed plaintiff during the trial and probably saw the embattled ankle. He decided that it had not completely healed; that pain persisted with disabling effects. He said, inter alia, in written reasons for judgment: "While the ankylosed joint at the time of the trial had not recovered enough to enable plaintiff to do the kind and type of work that he is equipped to do, the medical testimony seems to indicate that he will be able to resume the work of a common laborer in due course. No special skill is involved; consequently, plaintiff will not be permanently precluded from performing the work of a laborer."
We concur in these conclusions.
After plaintiff was discharged by the physicians as being able to resume work, defendant's office manager offered him "his job back", which was declined. This fact is stressed as confirming defendant's contention that plaintiff is a malingerer and does not wish to resume work, preferring to draw compensation payments. Unquestionably, when this offer was made plaintiff could not have performed the duties of a log hooker, in fact, any work requiring him to stand upon his foot. This sort of work cannot be done by one with a paining, injured ankle. It is worthy of note that for nearly eighteen months continuously after this offer was made, plaintiff was paid compensation on the basis of total disability. Also, payments were made for over one year subsequent to plaintiff being discharged by defendant's physicians as being able to resume hard work.
Ordinarily an ankle joint injury, as was plaintiff's, should completely heal within less than two years, but it is fairly certain plaintiff's case is an exception to that rule. The facts that he was hospitalized for so long and that disability continued for the admitted 126 weeks, go far toward proving that the injury has been unusually stubborn against treatment and that there is some existing pathology which has retarded expected complete healing. The physicians who testified in his behalf believe that by prudent, careful use of the leg, in due time, the swelling will subside and the pain will cease.
Prior to the accident plaintiff was physically strong, active and vigorous. He worked regularly. But for the effects of the accident he could have for the past two years been earning daily as much or more than the weekly compensation payments amount to, especially after the payment of twenty per cent thereof to his counsel. We hesitate to believe that he would be willing to fritter away his time for such a pittance.
We have to disagree with our learned brother of the lower court as to the governing section of the Workmen's Compensation Law, in the light of the facts of the case. As he held, and we concur therein, that plaintiff's disability while total, is but temporary, paragraph (a), subsection 1 of Section 8 of the Act, as amended by Act No. 242 of 1928, p. 357, controls. It reads as follows: "For injury producing temporary total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond three hundred weeks."
This holding is supported by the following rather recent decisions of the Supreme Court: Durrett v. Woods, 155 La. 533, 99 So. 430; Barr v. Davis Bros. Lumber Company, Ltd., 183 La. 1013,165 So. 185; McGruder v. Service Drayage Company, Inc.,183 La. 75, 162 So. 806; Robichaux v. Realty Operators, Inc., 195 La. 70,196 So. 23.
Defendant has paid an amount far in excess of its legal obligation toward expenses incurred in treating plaintiff for his injuries. The lower court correctly rejected his demand on this account.
For the reasons herein assigned, the judgment appealed from is amended by decreeing plaintiff entitled to compensation payments during the period of total disability, not exceeding, however, 300 weeks, less payments heretofore made; and, as thus amended, the judgment is affirmed. All costs are cast upon defendant. *Page 829