The Trial Judge has correctly and concisely stated the issues as follows:
"This is a suit for compensation instituted by Sylvester Green against H. E. Anderson and Great American Indemnity Company of New York, in which plaintiff alleges that on or about December 7, 1945, he received an accidental injury to his left foot while in the employment of H. E. Anderson, and that as a result of that injury he is permanently and totally disabled from doing work of a reasonable character. It is further alleged that Great American Indemnity Company of New York is the compensation insurer of said H. E. Anderson and that compensation payments at the rate of $20.00 per week were made from the date of the injury until August 6, 1946."
"Defendants admit that plaintiff received an accidental injury at the time and place alleged while working for H. E. Anderson, that the employment was hazardous within the meaning of the Workmen's Compensation Act, that the injury consisted of a fracture of one of the metatarsal bones of the left foot, that Great American Indemnity Company of New York is the employer's compensation insurance carrier, and that the sum of $680.00 was paid to plaintiff, representing compensation payments from the date of the injury to August 2, 1946, plus medical and hospital bills incurred in connection with the injury. Defendants deny, however, that plaintiff is permanently and totally disabled from doing work of a reasonable character, and affirmatively allege that he was able to return to work on or after August 2, 1946." *Page 537 
"The only issue presented, therefore, is whether or not plaintiff is now totally disabled from doing work of a reasonable character, and, if so, whether such disability is of a permanent or temporary nature. The trial of the case was completed on December 12, 1947, and is now before the Court for decision on its merits."
The case was duly tried and the lower court, in a well written opinion, concluded:
"* * * that at the present time plaintiff is totally disabled from doing work of a reasonable character and that such total disability has existed continuously from the date of the accident until the present time. The Court is further convinced that the disability is of a permanent nature, but that it may be somewhat decreased or reduced from total to a partial disability by proper medical treatment."
"Counsel for defendants suggest in their brief that in this case it would be appropriate for the Court to render a judgment similar to that rendered in the case of Delahoussaye v. D. M. Glazer Co., La. App., 185 So. 644, where the Court found that the disability was of a temporary nature and the time which would be required to effect a recovery could be estimated. The judgment in that case condemned defendants to pay compensation to a certain time, and required plaintiff to submit to proper medical treatment tendered by defendants during that period."
"In the present case, this Court is of the opinion that plaintiff should be required to submit to reasonable and proper medical treatment, but it is impossible for the Court to estimate the time which would be required for such treatment to produce any results or to estimate the percentage of disability which may still exist after such treatment has been completed. If as a result of the medical treatment thus administered, however, the incapacity of plaintiff should subsequently become diminished, defendants may apply to have the judgment modified at any time after six months from the rendition of this judgment, under the provisions of Section 20 of Act No. 20 of 1914, as amended by Act No. 85 of 1926."
Judgment was rendered "in favor of the plaintiff, Sylvester Green, and against the defendants, H. E. Anderson and Great American Indemnity Company of New York, condemning them, insolido, to pay compensation to plaintiff at the rate of $20.00 per week from the date of the injury, December 7, 1945, for a period not to exceed 400 weeks thereafter, subject to a credit of $680.00, or compensation for 34 weeks previously paid; provided that during said period defendant may tender to plaintiff, at defendants' expense, the professional services of a physician of plaintiff's own choosing for prescribing and administering reasonable and proper treatment to relieve or reduce his present disability. Upon plaintiff's refusal to accept such treatment and to cooperate with the physician administering it the compensation payments herein ordered may be discontinued. All costs of this proceeding are assessed to defendants."
Plaintiff is not complaining of the judgment of the Lower Court in any respect as he has taken no appeal; however, the defendants have appealed from this judgment. The defendants' main complaint seems to be that the present case comes within the rule and within the facts of the case of Delahoussaye v. D. M. Glazer Co., supra, and Perry v. Louisiana Central Lumber Company et al., La. App., 16 So.2d 136.
The District Court has ably and correctly reviewed the testimony in this case in his opinion and we quote:
"On December 7, 1945, plaintiff was engaged in cutting down trees for his employer, H. E. Anderson. Immediately after one tree was cut it slipped and the butt of the tree came to rest on plaintiff's left foot causing a fracture about the middle of the second metatarsal bone of the foot. Plaintiff was taken to the office of Dr. J. D. Frazar immediately after the accident occurred, where the fracture was reduced and the foot was placed in a cast. The cast remained in place on the foot for about three weeks when it was removed and another cast was applied. This second cast remained on plaintiff's left foot until June, 1946, when it was removed. The foot, therefore, remained in a cast for a period of approximately six months." *Page 538 
"At the time of the trial, on December 12, 1947, the Court found, upon actually inspecting plaintiff's left foot, that the great toe appeared to be normal and rested upon the floor in a normal position. The other four toes of that foot, however, were held suspended above the floor, the second toe being suspended about one and one-half inches above the floor, the second and third toes (should be third and fourth) being suspended slightly less than that distance above the floor, and the little toe being suspended about a half inch. The toes appeared to be rigid and stiff."
"Dr. W. E. Reid testified that he examined plaintiff on March 28 and on May 6, 1947, and that on both occasions he found that plaintiff was suffering from a contraction of all toes of the left foot except the great toe, which makes it impossible to flex any of the four toes enough for them to reach the floor. His inability to flex his toes forces plaintiff to walk on the ball of his foot, causing soreness in the entire foot and the foot is cold and has a bluish tint, due to poor circulation. Plaintiff's left leg was smaller than the right leg at that time, as shown by measurements taken by the doctor. This witness found that the fracture of the second metatarsal bone had healed but was slightly overlapped, and he testified that in his opinion that condition would assist in causing the contraction of the toes. His diagnosis was that plaintiff had a rheumatic condition of the entire foot, with contraction of the tendons of the dorsal surface of the foot. He testified that in his opinion plaintiff has a permanent contraction of the toes which will require a major surgical operation to correct, but that his condition might be improved some with proper treatment, rest, massage and heat, including short wave diathermy. He stated that it would be impossible for him to determine how much improvement could be obtained by such treatment, but that in any event plaintiff will always have some permanent disability as a result of this injury."
"According to Dr. Reid, plaintiff is now totally disabled from doing work of a reasonable character and will never be able to do the same type of work he was performing at the time he received the injury."
"Dr. Luke Marcela examined plaintiff in December, 1947, and found that plaintiff was suffering from a contraction of the four toes of the left foot. In his opinion the tendons of that foot had contracted and there was a fibrosis of the muscles that extend the toes. This condition, in his opinion, resulted from a fracture of the second metatarsal bone of the left foot sometime prior to the date of the examination and the resulting interference with the circulation of blood in those muscles. He further testified that this fibrosis occurred soon after the foot was injured and, in his opinion, occurred while the foot was in the cast."
"In Dr. Marcela's opinion plaintiff is permanently disabled from doing work of a reasonable character. The condition may be improved by performing a major surgical operation for the purpose of lengthening the contracted tendons but such operation is not always successful."
"Dr. J. D. Frazar treated plaintiff immediately after he received the injury by reducing the fracture and placing plaintiff's left foot in a cast. He testified that plaintiff was discharged in August, 1946, and at that time the fracture was completely healed and from a physical or X-ray examination there was no evidence of any disability to the foot. Plaintiff did complain at that time, however, of soreness and pain in his foot. This witness testified further that he examined plaintiff a few days prior to the date on which the trial was completed and found a contraction of the toes on his left foot, which condition was caused by a contraction of the tendons in the toes. In Dr. Frazar's opinion, the contraction of the tendons resulted from plaintiff's nonuse of his foot. He testified that upon discharging plaintiff he prescribed heat and exercise to remove the stiffness from the foot, and that if such instructions had been complied with by plaintiff, it is his opinion that the foot should have been restored to its normal use within ninety days after the cast was removed."
"Dr. Frazar testified, however, that the present condition of plaintiff's foot is permanent if no further treatment is administered. If plaintiff does follow a course of treatment it is this witness' opinion that the foot could be restored to its *Page 539 
normal use probably in ninety days, but it may take longer than that since more than two years have elapsed since the injury occurred."
"Dr. Floyd M. Beekom testified that the 'cocked-up' deformity of the toes to plaintiff's left foot was caused by the contraction of the extensor tendons and muscles of the foot, and that the cause of that condition was dis-use. In his opinion the foot could be restored to normal use within a period of from one to two months by the use of physio-therapy, which includes the application of heat, moist and dry, graduated activity and passive activity."
"Plaintiff testified that in compliance with Dr. Frazar's instructions, he soaked his foot in hot water four 30-minute periods a day for a period of at least six months after the cast was removed, that he has rubbed and manipulated his toes, that he has walked on his foot as much as he can, and has strictly followed all other instructions given him by Dr. Frazar. The condition of his foot at the time of the trial, he testified, was practically the same as it was six months after the date of the accident. He has never refused to take any treatments offered, but, on the contrary, he has submitted to all treatments which have been tendered to him by defendants."
In the case of Delahoussaye v. D. M. Glazer Co., supra, [185 So. 644], the court found the following facts and held:
"In the present case the testimony does not justify a holding of permanent disability. The disability arises from the stiffened fingers of the left hand which could not be closed completely against the palm of the hand without the exertion of some pressure which produces a certain amount of pain. In the accident which caused his injury plaintiff sustained a fracture of one of the small bones of the wrist. The hand remained immobilized in a splint for about five weeks, and as is usual, the immobilization produced the stiffness which is now found in the fingers. Plaintiff was given the usual medical instructions in such cases to exercise his fingers and was told that work would help in restoring his hand to normal use. There seems to be no doubt from all the medical testimony adduced that had plaintiff followed the instructions given to him he would long ago have recovered entirely from the effects of the injury. He appears however to be of the non-cooperative type and his failure in that respect has caused the condition to remain the same as it was although the doctor who attended him at the time testified that he found some improvement on the day the case was being tried.
"The preponderance of the testimony however is that with proper treatment the stiffness in the fingers should disappear and the disability should not continue longer than six months thereafter. One of plaintiff's own witnesses, Dr. H. B. White, testified to that effect. * * *
"Under the facts found we think that the district judge was correct in ordering treatment and limiting compensation for an additional six months.
"* * * we think that the provisions of Subsection 8 of Section 8 of the Act, p. 362, which gives the court a certain amount of discretion in fixing the period of compensation are applicable. The Subsection reads as follows: 'For injury producing temporary total or temporary partial disability the Court, may in its discretion, award compensation for a fixed number of weeks to be based upon the probable duration of such disability.'
"We take that provision to mean that where the court can reasonably satisfy itself of the probable period of time during which the disability will continue, whether total or partial, it can exercise its discretion as did the lower court in this case, in awarding compensation for a specified number of weeks."
In the present case, the District Court correctly found from the testimony that the plaintiff had been totally disabled from doing work of a reasonable character continuously from the date of the accident until the present time, and, further, that the disability of the plaintiff was of a permanent nature but that it might be somewhat decreased or reduced from total to partial disability by proper medical treatment, however, the Lower Court found it impossible, and correctly so, from the testimony to estimate the time which would be required *Page 540 
for such treatment to produce any results and to estimate the percentage of disability which might exist after such treatment had been completed. Therefore, where the Court is unable to satisfy itself of the probable period of time during which the disability will continue, it could not fix the specified number of weeks for the payment of compensation.
The holding of the Court in the case of Perry v. Louisiana Central Lumber Company et al., supra, is to the same effect as the holding in the Delahoussaye case. In this case, the Court held that the plaintiff was not permanently and totally or permanently and partially disabled and further found that at the time of the trial, while the plaintiff did suffer from a disability which prevented him from following any employment involving manual labor, that it was equally apparent that his condition was due to his own fault and which might be overcome within a reasonable period of time, and upheld the judgment of the trial court allowing plaintiff additional compensation for a period of twenty-four weeks.
The present case is similar to the case of Leday v. Lake Charles Pipe and Supply Company, La. App., 185 So. 655. In that case plaintiff sued for compensation for total permanent disability for a period not exceeding 400 weeks, on account of an injury he claimed to have sustained to the index finger of his right hand and which he claimed caused his finger to become stiff; that he suffered pain in his right arm and shoulder when his finger came in contact with any hard surface. The Court found that the preponderance of the medical testimony was to the effect that plaintiff was not able to do hard work, the kind he had been doing when injured because of the tenderness on the distal end of the index finger where the amputation was made and cause of the stiffness in the right hand. It further found from the medical testimony that plaintiff would not be able to do hard work unless the finger was amputated between the first and second joints, and then, according to the medical testimony, plaintiff's disability would be entirely relieved by this operation.
The Court held [185 So. 657]:
"Under this situation, the plaintiff is entitled to compensation for total disability so long as he is disabled to perform the kind of work for which he is fitted, not to exceed, of course, 400 weeks. This is clearly the holding of the Supreme Court in the cases of McGruder v. Service Drayage Co., Inc., 183 La. 75, 162 So. 806, and Barr v. Davis Bros. Lumber Co., Ltd., 183 La. 1013, 165 So. 185. Plaintiff is suing for compensation on account of his loss of capacity to work under Section 8, subsection 1, paragraph (b), Act No. 242 of 1928, p. 357, and not for the loss of a finger. Being incapacitated from work, his compensation should be fixed at $7.80 per week from the date of the injury to continue as long as the total disability continues, not to exceed 400 weeks, subject to a credit for the amount paid. Schneider v. Travelers Ins. Co. et al., La. App., 172 So. 580."
The Court rendered judgment in favor of the plaintiff, awarding him compensation for a period not exceeding 400 weeks, with legal interest on the respective payments from their due date until paid, subject to a certain credit, and further ordered, adjudged and decreed that "within a period of thirty days from the date on which this judgment becomes final, the said plaintiff is required to submit to an operation for the amputation of the index finger on his right hand between the first and second joints by a doctor of his own choosing and at the expense of the defendant; that on the refusal of the plaintiff to submit to such operation within said time, and without reasonable grounds for such refusal, then compensation hereunder is to cease after the expiration of said thirty days; with further provision that, any time after the expiration of said thirty days, the defendant is given the right to show that by reason of said operation, or otherwise, the plaintiff's disability no longer exists and compensation should cease."
In the case at bar, the preponderance of the testimony was to the effect that the plaintiff was totally and permanently disabled but that with proper treatment his disability might be minimized. Under these *Page 541 
facts, the District Court properly rendered judgment for total disability not exceeding 400 weeks and further ordered the plaintiff to submit to treatment by a doctor of his own choosing and at the expense of the defendant. However, we believe that the judgment of the District Court should be amended in order to make it more definite. It is therefore ordered that there be judgment in favor of plaintiff, Sylvester Green, and against the defendants, H. E. Anderson, Great American Indemnity Company of New York, condemning them, in solido, to pay compensation to plaintiff at the rate of $20.00 per week from the date of the injury, December 7, 1945, for a period not to exceed four hundred weeks thereafter, subject to a credit of $680. or compensation for thirty-four weeks previously paid; provided that during said period defendants shall tender to plaintiff at defendants' expense, within thirty days after this decree becomes final, the professional services of a physician of plaintiff's own choosing for prescribing and administering reasonable and proper treatment for a period not exceeding six months, in order to relieve or reduce plaintiff's present disability. Upon plaintiff's refusal to accept such treatment and to cooperate with the physician administering it, the compensation payments herein ordered shall be discontinued; all costs of this proceeding are assessed to the defendants.
As thus amended the judgment is hereby affirmed.