Plaintiff was injured on May 20, 1947, when an electric elevator of his employer, Shreveport Medical Arts Building Corporation, went out of control, rapidly ascended, and finally came to abrupt stop after ramming the upper portion of the shaft. He was operating the elevator at the time.
Within a brief time after the accident, Dr. A. P. Crain, whose office is in the employer's building, was summoned to render professional assistance to plaintiff. He had X-ray pictures made of different portions of his body, all of which were negative as to bone fractures or breaks. After this was done, and after having made a physical examination of him, Dr. Crain directed that he be carried to the North Louisiana Sanitarium in the City of Shreveport, where he remained as a patient until May 23rd. With Dr. Crain's consent, on that date, plaintiff was removed to his own home and thereafter continued to be under Dr. Crain's observation and treatment. He visited the doctor's office frequently. After the lapse of some six weeks, Dr. Crain decided that it would be well to have the advice and opinion of Dr. Gene Caldwell, a well known orthopedic surgeon of said city, as regards plaintiff's condition, and directed that he report to Dr. Caldwell for examination. Dr. Caldwell's diagnosis agreed with the X-rays previously taken, but thinking that perhaps there was some injury to the lower part of the spinal column and of the sacroiliac joints, he recommended that what is called "Russell" traction be applied for eight or ten days. This was done on July 6, 1947, after plaintiff had gone to the sanitarium the second time on Dr. Crain's advice. He soon grew tired of *Page 629 
the discomfort, and, as he says pain resulting, and over the protest of attending nurses, had his wife remove the traction appliances and he then returned home.
Plaintiff alleged that he endeavored to stop the ascent of the elevator by throwing the cut-off switch and to do so it was necessary that he stoop over and while in this position the elevator came to a sudden and abrupt stop; that from the suddenness of the stop his head was jerked, his neck snapped and his body in other respects was badly jarred and shaken, particularly the lower part of his back and sacro-iliac region; that he was dazed from the impact and intense pain in those regions of his body quickly developed and have persisted since the accident; that he has not recovered the use of his limbs and, as a final consequence of all of said injuries, disability to work became and is now total and permanent. He sued for workmen's compensation on that basis, less eight weekly payments of $17.81 each, and for medical and hospital expenses incurred and to be incurred, to finally restore him to normal physical condition, the amount of which, he alleges, will exceed $500.
The employer and its insurer, Standard Accident Insurance Company, were made defendants. The answer of these defendants narrows the controversial issues to that of the alleged injuries, their nature and possible duration. It is alleged in the answer that plaintiff left the sanitarium against the advice of attending nurses and without Dr. Crain's knowledge and had since continuously refused to accept any offer of treatment by defendants; but, it is not affirmatively asserted that his disability, if any, is now due to the fact that he refused to follow the advice of Dr. Crain. Defendants, of course, resist the suit primarily on the ground that defendant has fully recovered from all injuries from the accident and is now able to operate the elevator or do other work of which he was capable prior thereto.
Defendants further alleged that they expended $179 for hospital and doctors' bills in the effort to determine plaintiff's true condition and to relieve same by appropriate treatment.
There was judgment for plaintiff for compensation at $17.81 per week, during disability not exceeding, however, four hundred weeks, less eight payments made; and for $500 as medical and hospital expenses, less a credit of $158.50, consisting of payments on those accounts made by the defendant. The defendants appealed.
The day following his departure from the sanitarium plaintiff went to his family physician, Dr. Leroy Scott, for treatment. At that time he was complaining principally of pain in the lower portion of his back, and to some extent of pain in his left leg. Based upon physical examination considered in the light of the character and locus of the complaints of pain, his physical movements and negative X-ray pictures, Dr. Scott diagnosed plaintiff's ailment as being sprains of the ligaments and muscles about the lumbo-sacral area. He prescribed infra-red radiation which was applied daily for a time and at time of trial, June 17, 1948, "once in awhile as he comes in". This treatment, in Dr. Scott's opinion, had materially improved plaintiff's condition, but had not fully eliminated the pain and suffering. Dr. Scott testified that as further basis for his opinion, the response to various motions he put plaintiff through, "and the points he complained of pain have been the points upon which I have based my judgment as to his injuries. He has been consistent with that all along." This included his manner of walking and the manner in which he held himself. The doctor further said: "All those things are evidence of it * * * I tried to see whether or not he was malingering and I don't think so." Dr. Scott's opinion as to the duration of the disability was not sought by either side.
Dr. G. H. Cassity physically examined plaintiff on July 11, 1947, and on June 15, 1948. He agreed fully with Dr. Scott's diagnosis of plaintiff's injuries but went further to say that his eight or twelve infected teeth "may very well be aggravating the back pain, and also prolonging it." He was certain plaintiff could not work, on account of the back condition and that which he thought existed in the sacral *Page 630 
joint; and that such disability may persist for a year or more. He further stated that if the infected teeth are not removed the disability may become permanent in six more months, due to the likelihood of infective arthritis developing in the lower half of the spinal column. He was sure plaintiff's condition had materially improved between the two examinations made of him, a period of some eleven months.
Dr. Carson Reed physically examined plaintiff on June 16, 1947. He found subjective symptoms to support plaintiff's professions of pain in the lower part of his back, after putting him through different movements to check his reactions, and was of the opinion that he could perform light work if it did not require prolonged standing or walking. He agreed with Dr. Cassity that the infected teeth could be playing an important part in the continuation of pain and consequent disability, and was disposed to believe that plaintiff was to some extent exaggerating the conditions of which he complained. But, he added, if the pain of which plaintiff complains really exists, he is not able to do gainful work. Dr. Reed was not asked to give opinion as to the duration of plaintiff's disability.
Dr. S.W. Boyce also examined plaintiff a few days prior to the trial. His examination was thorough and extensive. He found a narrowing of the intervertebral disc between the fourth and fifth lumbar vertebrae, which he believed to be traumatic in origin and to account for the complaints of radiating pain down the left leg. He found subjective symptoms, the same as were found by other physicians who testified for plaintiff, plus spasms of the gluteal muscles of the left leg and suggested several treatments that might relieve the mentioned conditions, the first of which would be the removal of the teeth. He makes it clear that the clinical conditions he found in plaintiff are curable, and perforce, his disability not permanent. The following answer by Dr. Boyce pretty well sums up his opinion of the case, to wit: "The symptoms this man has are a logical sequence of the injury which he complains of, and the findings which I find."
He did not believe plaintiff physically able to engage in hard work.
Dr. Crain, who testified for the defendants, found on first examination of plaintiff, which was immediately after the accident, that he had suffered a slight concussion and a muscle strain or sprain of the lower part of the back, and injury of his neck. He thought plaintiff was exaggerating the seriousness of the pain and the disability he professed to have and felt sure that he had recovered from whatever injury he did receive in the accident. He testified that the Russell traction was applied mainly to take strain off of the back and to determine whether or not plaintiff had a ruptured disc. He also testified that plaintiff, after leaving the sanitarium, in the manner herein related, solicited further treatment from him but he declined to do so as he had consulted another physician.
Dr. Caldwell's first examination of plaintiff was on June 30, 1947, and he again examined him on October 28, 1947, and again on June 7, 1948. It was Dr. Caldwell's opinion, after first examining plaintiff, that he was suffering from the effect of the accident and he did not observe very much change in his condition to the time of the second examination, but it was his opinion, when he examined him the third time, that he had completely recovered from the ill effects of the accident, and was able to return to work. On the first examination Dr. Caldwell was impressed with the possibility that plaintiff was suffering from herniated intervertebral disc, and in an effort to determine whether or not his impression was correct, he prescribed application of the Russell traction. Concluding his testimony, Dr. Caldwell said: "I was unable to find sufficient positive objective clinical or x-ray signs to justify his subjective complaints."
Plaintiff candidly admits that the pain in his head and neck under treatment has disappeared and that impairment of his eyesight, which immediately followed the accident, had ceased. But he contends and testified that the pain in the left leg and about the sacro-iliac region has continuously persisted and is of such severity that he cannot perform any work that *Page 631 
would require him to stand or walk continuously. However, he also admits that this disabling pain, at the date of trial, was not as intense and severe as it had formerly been.
The record does not reveal plaintiff's age when hurt, but we infer that he is not beyond middle age. Dr. Caldwell's record describes him as being "a well developed, well nourished negro man." It is not shown that he, prior to this instance, was involved in an accident nor that he has heretofore made claim for workmen's compensation. He evinces a desire to be restored to sound health.
It is argued that because he left the sanitarium, under the circumstances herein mentioned, plaintiff thereby refused to accept professional treatment tendered by the defendants. It is not seriously contended that had he accepted said treatment he would have recovered from his injuries any sooner than he will by having followed the course adopted by him.
It will serve no useful purpose and it is not necessary to a correct decision of the case to make a ruling on the merits of these questions. Plaintiff testified that he was suffering intensely from several blisters, one or more of which had burst, caused by the Russell traction, and that nothing was done to relieve the pain, although the attention of nurses and physicians had by him been called to the situation. In open court the judge had plaintiff expose his left leg, then over a year after the accident, which revealed several scars, mute though positive evidence that the blisters were not of a trivial character.
While we are well aware that claimants to workmen's compensation frequently do exaggerate their professions of pain and consequent disability following an accident in which they are involved, yet this observation does not warrant a court to condemn every claimant who so contends, as being guilty of such insincerity. The facts of each case, of necessity, must govern. Here, we have a well developed, physically sound man involved in an accident of unusual character. He suffered some heavy bodily jarring from the terrific impact. We would expect serious consequences from an accident of this character. It is admitted by all physicians who examined plaintiff that total disability followed the accident. He says he has not recovered sufficiently to resume work and in this claim he is supported by the opinions of the majority of the doctors against whose sincerity and integrity no question can arise. And of special importance on this embattled issue is the testimony of Dr. Scott, his family physician, who has treated and observed him and his movements regularly for over a year, and under whose treatment the patient admits material improvement. As pain is a subjective symptom, its existence or non-existence is not susceptible of proof. All doctors agree that where reasonable basis can be found to support a claimant's profession of disabling pain, his sworn testimony to support the profession should have serious consideration, and not be arbitrarily rejected, as he alone knows whether the pain exists.
We are of the opinion that plaintiff made out a case of only total temporary disability. The record leaves us quite certain that he will regain sound health and physical condition long before the expiration of four hundred weeks from the date of the accident. Jones v. Chicago Mill Lumber Company, La. App.,15 So.2d 826.
It is shown that defendants expended $158.50 while treating plaintiff and that he is due Dr. Scott $357 for professional services. Therefore, the statutory limit of liability for hospital, medical and physicians' expense has been exhausted.
Therefore, for the reasons herein assigned, the judgment from which appealed is amended by awarding plaintiff compensation at the rate of $17.81 per week, during disability, but not exceeding three hundred weeks, less a credit of eight weeks compensation heretofore paid; and, as thus amended, the judgment is affirmed. Plaintiff is cast for costs of appeal; all other costs shall be paid by the defendants. *Page 632