ELLIS, Judge.
This is a workmen’s compensation suit in which the plaintiff alleged that on June 29, 1953, while employed by the defendant as a worker in the bag department at an average weekly wage of $35.60, while folding a stack of laundry bags she strained her right arm and elbow and that as a result of the alleged accident she was totally and permanently disabled and accordingly prayed for compensation at the rate of $23.14 per week beginning on the date of her accident and injury during her period of total disability not to exceed 400 weeks, less credits for compensation payments heretofore made which was found by the lower court to be from June 29, 1953 until February 11, 1954.
■ The defendant admitted the employment but denied all other material allegations of plaintiff’s petition and in the alternative and in the event plaintiff established her right to any workmen’s compensation benefits whatsoever, defendant averred that at most plaintiff’s condition was a self-limited one and disappears without treatment within a maximum period of from §ix to twelve months from the date of the alleged injury, and therefore asked the court to limit its award for a fixed number of weeks based upon the probable duration of disability under the provision of LSA-R.S. 23:1222. Defendant further, in the alternative and in the event only that the plaintiff established her claim to disability benefits and further in the event the court should limit the award under the provisions of LSA-R.S. 23:1222, alleged that plaintiff’s condition could be completely relieved by simple surgery, and as a condition precedent to the payment of any disability benefits plaintiff should be required to submit to such surgery.
The case was duly tried and resulted in a judgment for plaintiff awarding compensation benefits at the rate of $23.14 beginning June 29, 1953 and terminating on October 11, 1954, less credits for compensation payments heretofore made by defendant from June 29, 1953, until February 11, 1954, with 5% interest on all past due installments from their respective due dates until paid. The Court further fixed the fees of the expert witnesses and taxed them as costs. The district judge was convinced that plaintiff’s case called for the application of LSA-R.S. 23:1222.
From the above judgment the plaintiff has appealed.
The plaintiff has filed an alternative motion to remand in which it is alleged that subsequent to October 11, 1954, which was the date that the District Court terminated plaintiff’s compensation payments that plaintiff had been again examined by Dr. Charles V. Hatchette on October 18, 1954, and by Dr. George P. Schneider, Jr., on October 1, 1954, and that as a result of the examination both doctors were of the opinion that plaintiff was still totally disabled and that her period of disability was indefinite. Attached to this motion is a letter dated November 9, 1954 written and signed by Dr. George P. Schneider, Jr. and one of date October 19, 1954, signed by Dr. Charles V. Hatchette. As these attached documents can only be considered on the question of remand they will be discussed later.
*555 The District Judge correctly and concisely limited the issues in the case to four questions which he set out as follows:
1. Did the plaintiff prove that she sustained a compensable accidental injury?
2. If the above is answered in the affirmative, did plaintiff establish that she was disabled at the time of the trial on June 28, 1954?
3. If the above issues are decided in favor of plaintiff, then is the evidence such that the court would be warranted, in its discretion, in awarding plaintiff compensation for a fixed period of time, based upon the probable duration of plaintiff’s disability under LSA-R.S. 23:1222?
4. Finally, should the plaintiff prevail on all three of the above issues, should the plaintiff be required to submit to the minor surgery, which was tendered alternatively by the defendant, at penalty of forfeiting further compensation should she persist in her refusal to submit to such surgery?
The District Court answered the first question in the affirmative and there is no doubt from the facts in the record that he is correct. It is shown by the testimony that the plaintiff on June 29, 1953, was working for the defendant in the bag department and described her duties as “catching garment bags,” and that when 50 of these bags would accumulate she would shake them up and fold them and put them on a “buggy”. Plaintiff stated that when she turned these fifty bags in order to straighten and place them on the buggy she felt a catch in her right elbow which she described as a terrible pain. She had never had any trouble with this arm before and apparently immediately told her inspector about it which resulted in the inspector shutting the machine down which she had been operating and instructing her to go to the night foreman who apparently placed her on light work for the remainder of her eight hour shift after bandaging her arm. She never returned to work after the alleged accident, but was sent to Dr. Saint by her employer after two days at home.
Plaintiff also introduced lay testimony as to the accident and her condition. Her landlady testified that she had been boarding with her for approximately a year at the date of the trial, and that before the accident she had been there for about one month although she had known her for about two years prior to that time. She stated that plaintiff was apparently in good health the evening she left her house to catch the work bus on June 29, 1953, and that when plaintiff returned she told her of the injury to her right arm. Her arm was also bandaged and taped up when she returned, and that plaintiff complains of pain; that prior to the injury the plaintiff would sweep, mop, fold clothes and do general house work but that since that time she is unable even though she tries to do such things. There was other lay testimony to the effect that plaintiff was unable to use her arm after the accident and further testimony that her injury was talked about on the bus which apparently carried the workers to and from their work, and the bandage on her arm was seen by some of the passengers, and plaintiff told them about her injury.
In addition to the plaintiff’s testimony and the lay witnesses, Dr. Saint testified that plaintiff came to him on June 29, 1953, with the complaint of pain in the elbow region and that he made a tentative diagnosis of "inflammatory process in the elbow,” technically referred to as “bursitis-epicondylitis.” Dr. Saint advised her to rest. On June 30th he had x-rays made of her arm which showed nothing pathological. He could find no swelling. He stated that she complained of pain from the whole right arm from shoulder to the wrist, which he stated would be consistent with his diagnosis. Dr. Saint placed a plaster splint upon the plaintiff’s arm in order to immobilize her elbow which he left on for one week. He also gave her medication for pain and a specific drug for her condition, which is used for the treatment of bursae and joint diseases. After one week he removed the splint but her complaints of symptoms were not improved. He then' gave her some cortisone for one week which *556 is recognized as a drug specifically for arthritis. He then re-applied the splint for two full weeks and yet there was no difference in plaintiff’s complaints. Apparently Dr. Saint thought that this treatment should have relieved the plaintiff at least to some extent and because she persisted in stating that there was no difference after this treatment he concluded that she was a malingerer. He frankly stated that the inflammatory condition which he thought she might have could have been caused by the type of activity in which she was engaged. Dr. Saint readily admitted that there were some cases such as plaintiff’s that did not respond right away to treatment although he thought that within a month it should have. He stated that he did not know how long would be required for a condition such as the plaintiff had to completely clear up even with specific treatment. In other words, he testified it could clear up within a month and it was possible it would take several months or longer. In the face of this testimony it is difficult to understand why he branded plaintiff as a malingerer.
Taking into consideration the testimony heretofore discussed there is no doubt that plaintiff within the intendment of the law and the established jurisprudence suffered an accidental and compensable injury.
As to the second question presented, in addition to the testimony heretofore discussed we have that of Dr. Charles V. Hatchette, an orthopedic surgeon, and that of Dr. Edmond C. Campbell, a third orthopedic surgeon, whose testimony will be discussed.
Dr. Hatchette testified that he examined the plaintiff on September 3, 1953, and that at that time she was complaining of chronic pain over the lateral side of the right elbow. In stating her history it is, to be noted that she gave all of these doctors approximately the same facts. On the date stated Dr. Hatchette testified that plaintiff told him that she was no better and unable to extend her right elbow in the performance of her regular work. This doctor found ■“sensitivity over the origin of the extensor carpi radialis muscle at its attachment to the lateral spicondule of the right elbow. This was aggravated by extension of the elbow and she stated that she was unable to extend the elbow beyond 160 degrees, and on attempted forced extension she comr plained of considerable pain over the lateral spicondule. On supination, pronation and extreme flexion of the fingers she complained of pain over the attachment of this muscle.”
Dr. Hatchette found plaintiff’s complaints of pain consistent with the tests which he gave her and she gave him no impression that she was exaggerating her complaints. Dr. Hatchette stated: “It was my belief that Mrs. Ebarb had a radio-humeral bursitis, otherwise know as epicon-dylitis, or in lay terms known as ‘tennis elbow,’ of the right elbow region. This condition is not uncommon and is usually self limited, requiring approximately six to twelve months for complete recovery.”
He also testified that if plaintiff was correct in her statement she would have difficulty because of the pain in the lateral right elbow on the use of her forearm in performing the work she was doing when injured.
Dr. Hatchette saw plaintiff again on April 20, 1954, and his findings were substantially the same as those of September 3, 1953. Dr. Hatchette stated that her condition was a self-limited one which usually responded to rest and heat. He did not consider operative procedure “as it is not as satisfactory a procedure as the conservative therapy.” This doctor’s opinion is fully shown in the following testimony:
“A., It must be understood that most of the symptoms of this type of case are entirely subjective. Nothing can be found on X-ray examination, and we only have the patient’s word that he or she is having pain in this region. It is a subjective condition. As stated, I thought surely that Mrs. Ebarb would be completely recovered with rest and heat to the right elbow within a period of six to twelve months from the time *557 of the initial visit to this office! When she came back she was still complaining' of the same symptoms and I • thought-surely that she would be much improved. She stated that she was not. Now, taking the statements of the patient'at face value, I assume that she is requiring longer to recover from this condition than is usual.
“Q. Would I be correct in saying that you cannot at this time make any statement as to the probable duration of her further disability? A. Well, I should say that it certainly should not last more than three to six additional months. As a matter of fact, it should be cured. Assuming that the patient’s statements are correct, I cannot feature this condition lasting more than an additional three to six months.
“Q. Of course, there is always a possibility that it might? A. Anything can happen.
“Q. Well, now, the symptoms of which she complained, did they present a more or less typical picture of this tennis elbow syndrome? A. Yes, quite typical?
“Q. In other words, there was nothing about her complaints that was inconsistent with such a syndrome? A. . No.”
Dr. Schneider examined the plaintiff on April 20, 1954 and found marked tenderness about the right radial head and the inferior aspect of the right lateral humeral epicondylar area at the level of the origin of the extensor muscle mass. He also found a slight hypesthesia noted to pin prick over the ulnar nerve distribution in the hand involving the hypothenar eminence and the last two fingers but there was no evidence of abnormality of motor function or reflexes. He found her complaints of pain to be consistent with the testimony given, that is, she localized the pain fairly well. The x-ray examination revealed no evidence of bone or joint pathology. It was his impression from his examination that the plaintiff was suffering from a-chronic fibromyositis of the extensor muscle origin of the right forearm, commonly known' as, “tennis elbow,’.’ and at the time of this examination he was of the, opinion that the plaintiff was disabled from, resuming any type of work similar to that in which she was engaged at the .time of her injury. He further felt that the patient needed further conservative treatment, and although plaintiff told him that she had already had certain conservative treatment he emphatically stated that this would not prevent him from wishing to give further treatment. Dr. Schneider, when asked if he could give a definite date upon which the disability would terminate, stated that it would be a rather indefinite period of time but he would approximate anywhere from four to six months depending on the patient’s response. He readily admitted it could be shorter or longer. He also stated that conservative treatment in plaintiff’s case would be preferable to operative or surgical procedure and gave as his reason that it had been his experience with individuals suffering as plaintiff responded to conservative routine or treatment even though it might be prolonged,-whereas-he had not witnessed too great a success with surgical treatment of this type of condition. This doctor did not think that plaintiff was exaggerating her complaints. Dr. Schneider was further told that a period of ten months had elapsed since the date of plaintiff’s injury and the date of his examination, and based upon this fact he was asked whether this lapse of time would be of any significance to him in evaluating the case and he stated:
“None except that to date under what has apparently been a very adequate routine of treatment her condition has been somewhat refractory as far as the response."
Dr. Edmond C. Campbell first examined plaintiff on September 29, 1953 and found approximately the same condition as Doctors Hatchette and Schneider. He stated that he felt that plaintiff had .a “tennis elbow” which is an irritation of the bony prominence of the lateral humeral epicon-dyle and is usually felt to be due to a *558 partial tear of the extensor tendons at their attachment point. It was his opinion that plaintiff’s condition was self-limited and subsides within six to nine months without any treatment. By self-limited he stated that he meant that her condition was not likely to develope into any condition any worse than that from which she was suffering at the time he saw her. He further stated that nature will ordinarily effect a recovery without any procedure, surgical or otherwise, however, if there were specific treatments for her condition it might speed up the recovery. Dr. Campbell testified that on December 1st, 8th and 15th of 1954 he injected hydrocortone into the right elbow but that it apparently did not relieve her. This doctor examined plaintiff on January 7, 1954, and he still felt that she had a “tennis elbow” but evidently had changed his mind somewhat as to the necessary treatment as he stated that he believed she could be relieved by simple surgery. He had not changed his opinion with respect to her condition being a self-limited one nor had he changed it on the day that he gave his testimony which was June 11, 1954. On January 7, 1954, he thought plaintiff’s symptoms should have subsided within possibly six months of that date. Dr. Campbell was of the opinion that plaintiff would recover with or without surgery but sooner with the surgery.
From the above testimony there is no question but that the District Court correctly held that plaintiff had established her disability at the time of the trial on June 28, 1954.
In arriving at an answer to the third question it is first necessary that we determine whether the plaintiff’s condition is permanent or temporary since the maximum period for compensation depends upon which of these two is adopted. The specific provisions of our compensation law with which we must deal are LSA-R.S. 23:1221 (1) and (2) which are as follows:
“§ 1221. Temporary, permanent or partial disability; schedule of payments
“(1) For injury producing temporary total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not beyond three hundred weeks.
“(2) For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not beyond four hundred weeks. * * * ”
and LSA-R.S. 23:1222 as follows:
“§ 1222. Probable duration of disability as basis for compensation
“For injury producing temporary total or temporary partial disability the court may, in its discretion, award compensation for a fixed number of weeks to be based upon the probable duration of such disability.”
In Malone’s Louisiana Workmen’s Compensation Law and Practice page 355, we find the following summation with regard to temporary or permanent disability:
“ * * * In practice, if the anticipated period of disability is reasonably certain to be considerably less than three hundred weeks, the disability will be classified as temporary only.50 If, however, it appears at all plausible that the condition will approach, or exceed three hundred weeks in duration, the reward will be couched in terms of permanent disability, leaving-the employer free to seek a modification later if the disability ends.”
Cited under Footnote No. 50 are the following cases: Hardoman v. Glassed-Wilson Co., Inc., 2 Cir., 1926, 5 La.App 203; Gay v. Stone & Webster Engineering Corp., La.App., 1 Cir., 1939, 191 So. 745.
In Strother v. Standard Accident Insurance Company, La.App., 63 So.2d 484, 489, this Court specifically recognized the provisions of the law as to temporary or per manent disability when it stated:
“ ‘Counsel for defendant further contends alternatively that plaintiff at most *559 is entitled to an award for a limited period of time, not exceeding one year from the date of the trial, under the provisions of LSA-R.S. 23:1222. Since the evidence is conflicting, however, as to whether the disability is of a permanent or a temporary nature, the Court is unable to determine whether plaintiff will recover from the disability and, if so, when such recovery might he expected. Under those circumstances, compensation should be awarded during the period of disability, not to exceed the maximum allowed for permanent total disability. The defendant is protected by the provisions in the statute which permit a review of the judgment at six month periods. Vilce v. Travelers Ins. Co., La.App., 24 So.2d 485, 25 So.2d 256; Gilmore v. George W. Garig Transfer, Inc., La.App., 33 So.2d 99.”
Also in the case of Hall v. Shreveport Medical Arts Bldg. Corporation, La.App., 39 So.2d 628, 631, the Court stated:
“We are of the opinion that plaintiff made out a case of only total temporary disability. The record leaves us quite certain that he will regain sound health and physical condition long before the expiration of four hundred weeks from the date of the accident. Jones v. Chicago Mill & Lumber Company, La.App., 15 So.2d 826.”
See also Reed v. Zurich General Accident and Liability Insurance Co., La.App., 51 So.2d 840.
In the case of Gay v. Stone & Webster Engineering Corporation, La.App., 191 So. 745, 747, this Court stated:
“On the question of the nature of his injury and the probable duration of disability we find it impossible to arrive at any definite conclusion with what testimony there is before us, and to say with any degree of certainty when plaintiff will have recovered the full use of his leg so as to be able to resume his work. We agree with the trial judge that his disability will not be permanent * *
See also Jones v. Chicago Mill and Lumber Company, La.App., 15 So.2d 826.
The statement made by Justice LeBlanc in Gay v. Stone & Webster, supra, is applicable to the present case. From the facts in this case we can not definitely fix the possible duration of plaintiff’s disability, although the testimony is strongly in favor of the finding of the District Court, yet the doctors were wrong in their estimate, for plaintiff was still disabled in the opinion of these same doctors on the date of the trial which exceeded the time limit fixed by them upon their first examination of plaintiff. However, all of the doctors were positive in their testimony that plaintiff’s condition is temporary and not permanent and therefore should come under LSA-R.S. 23:1221(1).
The judgment of the District Court should be amended by awarding the plaintiff compensation not to exceed 300 weeks.
The next question is whether this court should order the plaintiff to submit to surgery. It is definitely shown that the operation is a very simple one, but in view of all the testimony we feel that it would be proper to award the plaintiff compensation as stated with the provision that she submit to treatment by a doctor of defendant’s choice and at the defendant’s expense.
The case of Green v. Anderson, La.App., 38 So.2d 536, contains a judgment which is similar to the one that should be rendered in the present case except that we ordered the defendant to tender to plaintiff at defendant’s expense within 30 days after the decree becomes final the professional services of a physician of plaintiff’s own choosing for prescribing and administering reasonable and proper treatment for a period not exceeding six months in order to relieve or reduce plaintiff’s present disability. We now believe that the doctor should be chosen by the defendant in all cases where *560 it involves a treatment and not an operation.
The next proposition to be considered is the question of the motion for alternative remand of the case. We cannot consider the letters of these two doctors on the merits of this case, only for the purpose of remand. We do not favor a remand for the reason that these two doctors nowhere state that plaintiff’s disability is of a permanent nature. They state that it is of an indefinite duration and we feel certain that they would testify that their diagnosis is the same, that is, that she' has what is commonly known as a “tennis elbow” which is not considered a permanent disability.
It is therefore ordered that there be judgment in favor of the plaintiff, Bessie Mae Ebarb; and against the defendant, Southern Industries Company,' condemning it to pay compensation to plaintiff at the rate of $23.-14 per week from the date of the injury, June 29, 1953, for a period not to exceed 300 weeks' thereafter, subject to a credit for compensation paid from June 29, 1953, until February 11, 1954, with interest at-the rate of .5% on. each unpaid installment from its maturity date; provided that during the period hereinafter fixed, defendant shall tender to plaintiff at defendant’s .-expense, within thirty days after this decree becomes final, the professional services of a physician of defendant’s own choosing for prescribing and administering reasonable and proper treatment for a period not exceeding six months, in order to relieve or reduce plaintiff’s, present disability. Upon plaintiff’s refusal to accept such treatment and to cooperate with the physician administering it, the compensation payments herein ordered shall be discontinued after the expiration of said period of 30 days.
It is further ordered that at any time after the expiration of the said 30 days, the defendant is given the right to show that by reason of said treatment, or otherwise, the plaintiff’s disability no longer exists and compensation should cease.
It is further ordered that the defendant pay all costs.
As thus amended the judgment is hereby affirmed.