Plaintiff, a commercial co-partnership, composed of Grover H. Britt and T. R. Britt, on January 24, 1947, purchased from the defendant, Ralph L. Leaderbrand, doing business in the City of Shreveport, Louisiana, under the trade name of Southern Mercantile Company, a large sized secondhand Hill 2-compartment cooler, for use in the conduct of plaintiff's retail meat and vegetable business in said city. The cooler had been in use for some years at Barksdale Field by the Government, and was acquired by the defendant a brief time prior to its sale to the plaintiff. It was installed in plaintiff's place of business by one Henry J. Smith, defendant's agent.
The cooler was designed to accommodate meats and vegetables, one compartment being dedicated to each commodity. Meats, it is shown, to be preserved against deterioration and discoloring must be exposed to a temperature of from 32 to 34 degrees Fahrenheit.
Very soon after the cooler was installed it failed to maintain temperature adequate to preserve meats placed therein. This condition, each time it arose, forced plaintiff to transfer meats placed therein into a refrigerating counter to prevent them from becoming unsalable.
Grover H. Britt several times endeavored to get in touch with Mr. Leaderbrand to acquaint him with the cooler's lack of functioning, but was unsuccessful. He did finally contact Mr. Smith, his agent, and complained to him of conditions. Smith undertook to correct the deficiency in the cooler's functioning by making adjustments without supplying new parts. His first visit for this purpose was made six or seven days after the cooler was installed. At that time he found the temperature too high for meat preservation and finally succeeded in bringing it down to proper registration. His last attention to the cooler was about forty-five days after its installation. He then made repairs (the character of which is not shown) and, as testified by him, to the best of his knowledge, left the cooler in "good shape." No charge was made for his services.
Notwithstanding Smith's efforts and attention, the cooler continued to give trouble. On February 24th, one month after installation, plaintiff engaged the Howse Refrigeration Service to bring about satisfactory operation of the cooler. Mr. Howse, of this company, found that proper temperature was not being maintained and believing the trouble was due to the motor's condition, removed it and carried it to an electrician for repairs. This consumed four hours, after which the motor was restored to place. A charge of $21.75 was made for this service, but the benefits derived therefrom, if any, were short lived because Mr. Howse on April 14th was again asked to give the cooler further attention. He did so and an additional expense of $27.18 was incurred. It is here unnecessary to give the nature of the repairs done on this occasion as no substantial change in the situation was wrought therefrom.
We conclude from the testimony that Smith's last effort to correct the cooler's unsatisfactory condition was prior to the second attempt by Howse to do so. Smith testified that he found evidence that someone had "tampered" with the cooler.
Finally, as the box persisted in its lack of efficient functioning, plaintiff employed Mr. E. A. King, evidently a competent mechanic, to ascertain the cause of the cooler's condition and to correct same if possible. He did both. Several repairs and replacements were made, the main ones being the installing of two valves and a new and larger line of copper tubing. The motor was also found to be in bad shape due to burning, and this, too, was repaired. *Page 647 
It is evident from the extent and character of work done by Mr. King and the replacements necessary to attain desired service from the cooler, that someone prior to that time had rendered incompetent service to it. From the time King did his work to the date of trial the cooler gave highly satisfactory service. King's charges for labor and replacements amounted to $154.68, which was paid by the plaintiff, as well as the charges made by Howse.
Plaintiff instituted this suit to recover from the defendant judgment for the amounts expended by it to the end that the cooler would render the service for which it was purchased, being $203.61.
It is alleged by plaintiff that the cooler's condition, rendering it necessary to incur said expenses, existed at the time it was purchased from the defendant; that without incurring said expense the cooler was useless for the purposes for which it was desired and purchased; that had the cooler's revealed condition been known to plaintiff it would not have been bought because a dependable box of the kind is indispensible to the successful conduct of a retail meat business.
Defendant generally denies the allegations of the petition, but admits that its agent, Smith, did receive one service call from plaintiff, soon after the box was installed, the complaint being that adequate temperature was not being maintained; that Smith found that all adjustments had been tampered with but hemade the necessary corrections; that if the cooler failed to any extent to render the service expected of it, it was due to plaintiff's negligence in trying to make the adjustments itself or refusing to avail itself of the services of defendant's mechanic, or by having unskilled and untrained mechanics attempt to remedy the shortcomings.
Judgment was awarded plaintiff for $109.68, from which it prosecutes this appeal.
Immediately prior to taking of testimony defendant filed exceptions of no cause and no right of action, which were argued and by the court referred to the merits of the case. These exceptions are predicated upon the alleged ground that the petition does not affirmatively disclose that defendant was put in default after it was discovered that the contract of sale had been passively breached by failure of the cooler to adequately function. The lower court evidently concluded that the exceptions were not well founded, or else it would not have rendered judgment on the merits of the case. The exceptions are urged in brief in this court. As we view the record in the light of the established pertinent jurisprudence, the exceptions are not before us for consideration. Defendant did not appeal and has not answered the appeal perfected by the plaintiff. In these circumstances, the judgment and, of necessity, prior rulings on matters and questions concluded by it, may not, in appellee's favor, be revised or amended by this court. Jones v. Chicago Mill Lumber Co., La. App.,15 So.2d 826, and cases therein cited.
There remains for consideration only the adequacy of the amount of the judgment. Appellant contends that it should be amended by increasing the amount thereof to that for which it sued.
This action is in reality one in diminution of the purchase price, otherwise known as quanti minoris. Bearing thereupon are articles Nos. 2541 and 2542 of the Civil Code, which read as follows:
"Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price.
"The buyer may also content himself with resorting to this action, when the quality, which the thing sold has been declared to possess and which it is found to want, is not of such importance as to induce him to demand a redhibition."
In such a case the standard of responsibility of a bona fide seller, such as we find defendant to be, is the difference in value at date of sale between a sound and unsound article. Stating the principle differently, it may be said that measured in dollars and cents the amount necessarily *Page 648 
expended to put the article in the sound condition tacitly, if not expressly, guaranteed by the good faith seller, is the difference between a sound and unsound article. See: Iberia Cypress Co., Ltd. v. Von Schoeler 121 La. 72, 46 So. 105; William S. Peterkins v. George Martin 30 La. Ann. 894; Pere v. Dalgarn 3 La. App. 775-778.
It is not seriously denied by the appellee that the cooler, immediately after being installed, developed deficiencies that rendered it unfit for the use and purposes for which, to appellee's knowledge, it was purchased. Smith, Howse and King all testified that when they reported, at plaintiff's request, to ascertain the cooler's condition, each found that it was not maintaining proper temperature to preserve meats. Each then tried his hand at repairing it.
To allow the cooler to remain in the condition found by each of these workmen would have necessitated non-use of it, or would have, if used, made certain the spoiling of meats placed therein with consequent loss to the owner; and, in addition, he would have been exposed to suits for damages by customers to whom any of the meats were sold.
In view of the foregoing circumstances, the reasonable or logical course to have taken was to bring the matter to defendant's attention and, failing in this, to contact its service man, Smith, as was done. Had defendant been contacted he would doubtless have called upon Mr. Smith to give the cooler his best attention. Smith having failed to put the cooler in proper running order, plaintiff was within its own rights when it looked elsewhere for assistance. Not being an experienced refrigerator mechanic, it had to rely upon advice of those who professed to be competent in such business. If it erred in selecting Mr. Howe, the expense incurred thereby should not fall upon it. The proximate cause of the loss was not due to any lack of care on plaintiff's part but to defendant in selling an unsound article and not repairing same after several opportunities to do so.
Briefs of counsel do not enlighten us as to why the court gave judgment for an amount that does not correspond with the charges of either King or Howse. The minutes show that the amount of the judgment was intended to cover "cost of labor and materials for replacing valves and tubing." This, of course, has reference to the expense bill of Mr. King.
We can perceive of no good reason for dividing King's bill. Evidently the entire amount of same was necessary to put the cooler in first rate running order. Certainly we would not be warranted in arbitrarily holding that any part of this bill was incurred unnecessarily. No effort whatever was made by the defendant to prove such to be true.
For the reasons herein given, the judgment from which appealed is amended by increasing the amount thereof to Two Hundred Three and 61/100 ($203.61) Dollars, with interest at legal rate from judicial demand; and, as thus amended, said judgment is affirmed with costs.
 On Rehearing.