CAVANAUGH, Judge.
This suit by the plaintiff against the defendant who is the compensation insurance company insuring the workmen’s compensation liability of American Bitumuls & Asphalt Company is for compensation at the rate of $30 per week for a period of 364 weeks commencing on June 28, 1952, with interest on each past due installment at the rate of 5% per annum and 12% additional as a penalty and $1,000 as a reasonable attorney’s fee.
The plaintiff alleges that prior to October 19, 1951, he was employed by the American Bitumuls & Asphalt Company at its plant in the City of Baton Rouge, Louisiana, which employment required him to do heavy strenuous work such as loading and unloading trucks and railroad cars with products sold by the asphalt company. He further alleges that on the date of the injury by reason of the force of an explosion of a tank truck on the premises of his employer which he was loading with emulsified asphalt, he was thrown violently to the ground, striking his head against some hard object, resulting in a cerebral concussion or cerebral contusion, fractures in the region of his wrist and forearm and to the left side of his face and jaw, and he was burned about the face, head and body, and that at the present time he is suffering from pain and swelling in his left wrist and forearm and recurring pains in the left side of his face and head which he claims has permanently and totally disabled him from resuming his former employment or work of a similar nature. He further alleges that he was hospitalized for his serious and painful injuries immediately following the accident and treated by physicians and doctors employed by the defendant for several months and was paid compensation at the rate of $30 per week from the date of the accident until June 28, 1952, when the defendant discontinued paying compensation knowing that he was unable to resume his former employment or to do any work of a reasonable character. He further alleges that he has no education or special training and must depend upon performing heavy labor of the type which he performed for his employer to earn a living.
The defendant admits the employment, the occurrence of the accident, the wages earned by the defendant and the payment *667 of compensation, and alleges that it had paid $729.53 medical expenses and compensation from the date of the accident through June 28, 1952, when compensation payments were stopped after plaintiff’s physicians discharged him to return to work. Therefore, the only issue presented in this case is whether or not the plaintiff was totally disabled at the time the case was tried and unable to resume his employment.
The District Court, at the conclusion of the evidence, awarded the plaintiff compensation at the rate of • $30 per week from June 28, 1952 until June 23, 1953, or compensation for one year from the date the compensation had been discontinued. The other demands were rejected.
The insurance company suspensively appealed from the judgment, and the plaintiff has filed an answer to the appeal asking that the judgment be amended to award him compensation for total disability. Following the filing of the answer to the appeal, plaintiff filed a motion to remand.
Plaintiff urges the following grounds for remanding this case to the District Court for the purpose of taking additional evidence on the question of whether or not he was able to return to his former employment or similar work:
1. That this is a suit arising under the Workmen’s Compensation Act of the State of Louisiana, wherein the plaintiff is seeking an award for permanent and total disability, and where the only issues on the trial of the case were the physical condition of the plaintiff, and that is whether or not he had recovered to the extent that he was able to return to his former employment or other work of a reasonable character.
2. That the Trial Court awarded plaintiff compensation for a period beginning on or about June 28, 1952 and ending June 23, 1953, or for a period of 1 year, in addition to the thirty-six weeks’ compensation which the insurer of the plaintiff’s employer, had, prior to the institution of the suit, admittedly paid.
3. The defendant took an appeal from this judgment, and the plaintiff has filed an answer to the appeal, seeking to get the award increased so as to give him permanent and total disability.
4. That plaintiff’s principal complaint consists of a head and nerve injuries on the right side of his face and head, and among the expert doctors and physicians who testified on the trial of the case were Dr. Homer D. Kirgis, a neurosurgeon on the staff of Ochsner Clinic, of New Orleans, Louisiana, and Dr. Duane Foreman, a neurosurgeon practicing his profession in the city of Baton Rouge, Louisiana, both of whom testified that in their opinion plaintiff was, at the time of their examination, disabled from doing hard and laborious work, but that the prognosis was good, and they believed that in a relatively short time he should be able to resume light work and eventually work of a type which he was doing when injured, or other work of a like nature.
5. That subsequent to June 23, 1953, plaintiff’s complaints of pain and suffering persisted, and consequently his disability persisted, and accordingly, he returned to Dr. Homer D. Kirgis, of the Ochsner Clinic, for further examination; that on this occasion Dr. Kirgis found, from his neuro-logic examination, that the plaintiff’s condition was unchanged, and in view of his continued difficulty, he had an examination made by Dr. H. Tharp Posey, also a member of the staff of Ochsner Clinic, by means of an electroencephalogram. Dr. Posey made the following report: “Amplitude, asymmetry, temporal, awake and asleep, left temporal down, moderate. Very strongly suggestive of localized brain damage.”
6. Based upon this report, Dr. Kirgis now concludes that the plaintiff sustained a cerebral contusion at the time of the injury, and that as a result he will' continue to suffer discomfort for a rather long period of time.
7. That the original of the report of Dr. Kirgis is attached hereto and made a part hereof for the examination of the Court, and that copies thereof have been furnished to opposing counsel.
8. That in the interest of justice, this case should be remanded to the District *668 Court for the purpose of allowing the introduction of this new evidence pertaining to the continued disability of the plaintiff, particularly in view of the fact that the Trial Court, in his reasons for judgments, stated in open Court that he believed a great deal of plaintiffs trouble was in his own mind, and if he would just forget about this accident and his injuries and go back to light work, his pain and suffering would subside and he would be able to resume gainful employment, and thus he concluded that plaintiffs statements as to his pain and suffering were psychic to a large degree.
9. The records of this case will show that the plaintiff, at the time of the severe accident and ensuing injuries, had been employed continuously for the same employer for a period of over 20 years, and that subsequent to the injuries, he had been examined by numerous physicians seeking in every way possible to ascertain the cause of his present trouble, submitting to any and all examinations which were requested by the defendant, and thus the fact that he has only recently been examined by means of the electroencephalogram, which shows the brain damage, cannot be attributed to the plaintiff.
Plaintiff’s evidence on the trial of the case consisted of his testimony, that of his wife, Thelma Betz, five lay witnesses and three physicians who had examined him or treated him following the accident and pri- or to the trial. Two of plaintiffs medical witnesses, upon whom he mainly relied to establish his disability, were Dr. Duane Foreman and Dr. Homer D. Kirgis of New Orleans. These two doctors are neurosurgeons and are especially skilled in their field to determine the effect of injuries to the brain or nervous system.
Dr. Louis Mayer, who was the attending physician at the time plaintiff suffered the accident and injuries complained of testified for plaintiff.
In addition to the medical evidence adduced on the trial of the case, by stipulation, plaintiff and defendant filed the following medical reports from examining physicians: Report of examination dated March 21, 1952, by Dr. Moss M. Bannerman, orthopedic surgeon; reports of examination made by Dr, J. Willard Dowell on June 12, 1952 and March 12,1952, orthopedic surgeon; report of Dr. James L. Coffee, dated February 26, 1953, a specialist in oral surgery; reports of Dr. J. Ralph Phillips, an eye, ear, nose and throat specialist, dated June 20, 1952, January 18, 1952 and October 25, 1951; report of Dr. Joseph P. Tomsula, radiologist, dated June 3, 1952; and report of Dr. Dean W. Geheber, radiologist, on October 26, 1951, December 19, 1951 and June 17, 1952. We have ■ examined all of these reports and most of them deal with bone pathology, and none of the evidence contained in these reports would be of any value in determining whether or not at the time the case was tried the plaintiff was suffering from disability caused by a concussion or contusion of the brain. The only evidence in the record which would lend support to remand this case offered on the trial was that supplied by Dr. Homer D. Kirgis in his deposition on November 19, 1952, in which he found at that time, as far as his neurological examination was concerned, there was no evidence of the plaintiff’s having sustained permanent damage to the brain from the cerebral contusion or cerebral concussion which he sustained but from his behavior he suspected that there was some residual from it. This witness first examined the plaintiff on August 26, 1952, and at the time he was giving his deposition a written report by him dated September 10, 1952 was filed in the record and marked “Dr. Kirgis — 1”. The examination being conducted had reference to his findings and evidence on the examination made on August 26, 1952. This report is not attached to the copy of the deposition we have in the record in this case, and we do not know whether the deposition covers an examination on the entire report. The record does not show whether plaintiff’s counsel inadvertently omitted including it in the deposition when it was filed. In view of the fact that this report is a part of the doctor’s deposition which was filed in the record, this report should have been included when his deposition was filed.
*669 The evidence shows that plaintiff suffered very painful burns when the tank on the truck blew up throwing him several feet from the truck and covering him with hot asphalt. He was immediately taken to a Baton Rouge hospital where solvents were applied and this asphalt removed. He suffered painful burns, fractures and contusion of the bones of the face and head. The medical evidence shows he made a very satisfactory recovery, and it is the opinion of all of the doctors who attended and who-examined him, including his own physicians, at the time of the trial that he was able to resume some type of work ánd that his disability at the time of the trial was mostly mental.
Plaintiff, prior to the accident, had been in the employ of the American Bitumuls & Asphalt Company for more than 20 years and had always performed his work satisfactorily to his employer. He now thinks that on account of the injuries he suffered in the accident he is unable to do any type of work and hasn’t tried to do any since the accident. All of the physicians testifying in the case recommended that he do some type of work, but he still persists that he is not able to on account of the pain and discomfort he suffers in his head and arm.
The motion to remand has attached to it a letter from Dr. Homer D. Kirgis, the neurosurgeon who testified for plaintiff by deposition taken on November 19, 1952, in which it is recited that he had an electroencephalogram made of plaintiff to determine whether the plaintiff only suffered a concussion or contusion of the brain. This report is dated May 23, 1953, which was subsequent to the submission and rendition of the judgment in this case. Dr. Kirgis was of the opinion that the plaintiff suffered some injury to his brain and that his mental condition was real rather than feigned.
We understand that an electroencephalogram is a graphic recording of the electrical currents developed in the cortex by brain action and by this examination it can be determined whether ,the plaintiff actually suffered any damage to his brain from the explosion or fall. This report shows that the physician, Dr. H. Tharpe Posey, who made the electroencephalogram, states that it was very strongly suggestive of localized brain damage.
We quote the following, from Gray’s, 1949, Attorney’s Textbook of Medicine:
“Brain injury from direct trauma may lead to serious disturbance clearly evident upon electroencephalographic study. Immediately after injury, findings usually parallel those to be expected with the symptoms- presented. Marked reduction of activity results from coma and is indicative of grave prognosis. Spasmodic muscular action leads to sharp spikes coincident therewith. A normal electroencephalogram indicates that little or no brain injury occurred even in the presence of considerable fracture unless of the frontal area. Major destruction may then produce little change, because large areas of the frontal lobes apparently have never yet developed functions of importance. They are the silent areas of the brain.
“Abnormal electroencephalographic records are to be expected in the presence of damage to other parts of the brain. Should positive findings con--tinue long after ■ injury, particularly with a history of coma, the outlook is very grave. It is probable that lacerations have led to connective tissue ad-hesions between the cortex and the covering meninges, or that overgrowth of the supporting, connective tissue framework within the brain itself is causing irritation leading to abnormal 'neuronic discharge. The inherent tendency of abnormal connective tissue to contract as time goes on results in continued irritation.
“The electroencephalograph may demonstrate the exact locality of the irritative lesions, permitting surgery with greater surety of success. However, confirmatory obj ective symptoms . .ordinarily permit determination more accurately. While electroencephalographic studies confirm such diagnostic *670 conclusions, this agency has not established a new method of sufficient certainty to replace careful clinical observations.”
We do not know why this method of determining any damage to plaintiff’s brain was not resorted to by this witness on his first examination, but we do not believe that his failure to make this type of examination should preclude the plaintiff from obtaining it prior to a final determination of his disability. If the plaintiff’s disability is real, actual, and not feigned, and he suffers an actual injury to his brain, which would be the basis of his present complaint and which cannot be properly adjudicated at this time because the record does not contain the testimony showing the value of this type of evidence in cases of this kind, we think that the case should be remanded and plaintiff accorded the right to produce it.
We have the discretionary power under Article 906 of the Code of Practice to remand cases for the purpose of obtaining additional evidence on the question of disability. We followed this course in Vilce v. Travelers Insurance Company, La.App., 18 So.2d 243, and our brothers of the Orleans Circuit followed it in McClung v. Delta Shipbuilding Company, La.App., 33 So.2d 438.
If we do not remand this case, we would feel that we have not given plaintiff an opportunity to establish his claim by evidence which probably could have been had at the time but of which the expert witness did not avail himself, but who thought if the employee had suffered a contusion instead of a concussion his conclusions or prognosis would have been materially different.
For the foregoing reasons, the judgment of the District Court is reversed and this case remanded for the purpose of permitting the plaintiff to take the testimony of Dr. H. Tharp Posey and Dr. Homer D. Kirgis as to the electroencephalogram made of the plaintiff by Dr. H. Tharp Posey for the purpose of showing whether plaintiff suffers any brain damage as a result of his injuries and reserving to defendant the right to produce similar evidence, and after said testimony has been taken, that this case be disposed of according to law.