87 So.2d 230 (1956)
Lee NEWMAN
v.
ZURICH GENERAL ACCIDENT & LIABILITY INSURANCE CO.
No. 4148.
Court of Appeal of Louisiana, First Circuit.
March 20, 1956.
On Application for Rehearing April 27, 1956.
*231 King, Anderson & Swift, Thos. C. Hall, Lake Charles, for appellant.
Carmouche & Martin, Ernest G. LaFleur, Jr., Lake Charles, for appellee.
ELLIS, Judge.
Plaintiff filed this suit in which he is seeking workmen's compensation benefits at the rate of $30 per week beginning January 2, 1954, not to exceed 400 weeks; less compensation previously paid, together with the usual interest and reasonable medical expenses as a result of an alleged accidental injury on January 2, 1954 while employed by Anderson Brothers Corporation as a laborer. The suit was filed against the employer's insurer.
The accident, the compensable nature of the injuries, the disability, the rate of pay and compensation if any, the amount of compensation previously paid, viz., from January 2, 1954 through September 5, 1954, and that no payments have been made since the latter date, were all stipulated and admitted. The only contested issues were (1) duration of disability and (2) whether or not plaintiff should be denied compensation for alleged failure to cooperate.
The case was duly tried and with written reasons which contained a detailed discussion of the testimony, the learned judge of the District Court rendered judgment in favor of the plaintiff for an additional five months period "commencing January 2, 1954, and ending January 7, 1956, or 105 weeks, at $30.00 per week; with interest at the rate of 5% per annum on each overdue payment from its due date until paid subject to a credit for the period, January 2, 1954, to September 5, 1954, inclusive.
"It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff and against defendant in the full and true sum of $641.00 with interest at the rate of 5% per annum from judicial demand until paid.
"The fees of the experts Drs. Edmond C. Campbell, George P. Schneider, and George B. Briel, are fixed at $35.00 each and taxed as costs.
*232 "All costs to be paid by defendant."
A motion for rehearing was filed based upon the interpretation by plaintiff's counsel of the case of Whiddon v. Concrete Pipe Products Company, 78 So.2d 439, 440, decided by this court. Counsel argues that this case "stands for the proposition that when it is established that an employee is disabled on the date of trial and moreover that it cannot be definitely stated when he will be able to return to work it is more in keeping with the Legislative intent of the compensation act to place the burden of reopening the case for amendment of judgment, in the event of full recovery, squarely upon the insurer or employer's shoulders. The whole purpose of the compensation act, we submit, is to remove the losses and expenses incident to industrial accidents from the shoulders of the hapless employee and to place that burden on the employer who is in a better position to spread the costs of disabling accidents over the general public as one of his expenses of production."
On rehearing the District Judge granted the motion with the following written reasons:
"This matter is before the Court on an application by plaintiff for a re-hearing from a judgment of this Court granting him compensation for 105 weeks under the provisions of the Workmen's Compensation Act of this state. Plaintiff complains that the judgment is erroneous in that it did not award him compensation for temporary total disability for the duration of his disability not to exceed 300 weeks. Plaintiff cites the case of Whiddon v. Concrete Pipe Products Company, 78 So.2d 439 (decided by Court of Appeal, 1st Circuit, January 28, 1955) as sustaining his position. On the other hand defendant takes the position that the court is correct in its judgment citing Delahoussaye v. D. M. Glazer & Co. [La.App.], 185 So. 644 and Perry v. Louisiana Central Lumber Co. et al., 16 So.2d 136 decided by the Court of Appeal, first and second circuits respectively.
"The Court, in its original decree, made the award of 105 weeks under LSA-R.S. 23:1222 which provides that in cases of injury producing temporary total or temporary partial disability the Court may in its discretion award compensation for a fixed number of weeks based on the probable duration of said disability.
"The Court has read the Whiddon case supra and cannot distinguish it from the case at bar. The Delahoussaye case supra was brushed aside by the Court in the Whiddon case and the Perry case supra was decided by the Second Circuit Court of Appeal.
"We feel that the Whiddon decision has the effect of rendering inoperative the provisions of LSA-R.S. 23:1222. However, since it is the last expression of the First Circuit Court of Appeal we feel bound by it.
"Accordingly, the application for rehearing is hereby granted herein and the original judgment of court in the above numbered and entitled case is amended to read as follows:
"For the written reasons assigned judgment is hereby rendered in favor of plaintiff and against defendant, in the sum of $30.00 per week, beginning January 2, 1954, during disability, not to exceed 300 weeks, with interest at the rate of 5% per annum on each overdue payment from its due date until paid, subject to a credit for the period, January 2, 1954 to September 5, 1954, inclusive.
"In all other respects the original decree in this case to remain in full force and effect."
From the above judgment the defendant has appealed and the plaintiff has answered asking that he be awarded compensation not to exceed 400 weeks instead of not to exceed 300 weeks.
The only question on the appeal is the duration of plaintiff's disability which counsel for defendant in argument and brief states "is a medical one, involving the interpretation and application of the *233 case of Whiddon v. Concrete Pipe Products Company, Inc. [La.App.], 78 So.2d 439, decided by this Honorable Court on January 28, 1955".
In the Whiddon case, supra, the lower court had awarded judgment under LSA-R.S. 23:1222 "for a fixed number of weeks to be based upon the probable duration of such disability." (Emphasis added.) We found as a fact from the testimony that the disability was of indefinite duration, meaning that the testimony did not establish the probable duration of disability required by LSA-R.S. 23:1222.
The lower court also stated that we had brushed aside the case of Delahoussaye v. D. M. Glazer & Co., La.App., 185 So. 644, 645, decided by this court. There was no such intention but only a comparison of the definite nature of the medical testimony adduced as to the probable duration of plaintiff's disability in the Delahoussaye case as compared to the indefinite duration shown by the testimony in the Whiddon case.
This court could not render inoperative LSA-R.S. 23:1222 as such action would only be in the power of the Legislature. Further, this court has consistently recognized the provisions of LSA-R.S. 23:1222 and specifically approved and interpreted this act in the Delahoussaye case, supra, in the following language.
"The preponderance of the testimony however is that with proper treatment the stiffness in the fingers should disappear and the disability should not continue longer than six months thereafter. One of plaintiff's own witnesses. Dr. H. B. White, testified to that effect. Dr. Walter Moss, who has had an unusual number of such cases under observation during his several years' experience at the Charity Hospital in New Orleans, is of the opinion that under proper direction by a physician as how to manipulate his hand he should recover its full use in from one to three months time.
"Under the facts found we think that the district judge was correct in ordering treatment and limiting compensation for an additional six months. * * * In the present case, on the facts presented, we think that the provisions of Subsection 8 of Section 8 of the Act, p. 362, which gives the court a certain amount of discretion in fixing the period of compensation are applicable. The Subsection reads as follows: `For injury producing temporary total or temporary partial disability the Court, may in its discretion, award compensation for a fixed number of weeks to be based upon the probable duration of such disability.'
"We take that provision to mean that where the court can reasonably satisfy itself of the probable period of time during which the disability will continue, whether total or partial, it can exercise its discretion as did the lower court in this case, in awarding compensation for a specified number of weeks." (Emphasis added.)
Furthermore, this court, in the same session in which the Whiddon case was argued as well as decided, heard argument on and decided the case of Ebarb v. Southern Industries Company, 78 So.2d 553, 554, in which the third question therein involved LSA-R.S. 23:1222. A perusal of this case will show that we gave full recognition to the Statute in question. We held that from the facts in the case we could not definitely fix the probable duration of plaintiff's disability although the testimony was strongly in favor of the finding of the district court. It will be noted that the word "possible" was inadvertently used by the organ of the court, who is the same in this case, rather than the word "probable." It is self-evident that where two cases were heard in the same session and decided at the same time by the same court on the same question that we did not intend by one to render inoperative a certain law and by the other give it full recognition and validity.
*234 It might be well at this point to reach a definite understanding as to the meaning of the word "probable" as it refers to the duration of plaintiff's disability which will be dependent upon the medical testimony in this case.
We find in Black's Law Dictionary that the word "probable" has been interpreted to mean the following:
"Having the appearance of truth; having the character of probability; appearing to be founded in reason or experience. State v. Thiele, 119 Iowa 659, 94 N.W. 256. Having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt; likely. Barrett v. Green River & Rock Springs Live Stock Co., 28 Wyo. 379, 205 P. 742, 743. Apparently true, yet possibly false. Spadra Creek Coal Co. v. Harger, 130 Ark. 374, 197 S.W. 705."
We thus see that the word "probable" does not mean that all doubt is eliminated. An opinion upon any future happening or event is, of course, subject to doubt but may be probable if founded in reason or experience or supported by evidence or apparently true.
Our learned brother below in his written reasons for his original judgment gave a far and sufficient summation of the medical testimony and we quote:
"The evidence discloses that plaintiff suffered a back sprain while working for Anderson Brothers Corporation on January 2nd, 1954. The insurance company adjuster sent plaintiff to Dr. W. C. Fisher, general practitioner at Lake Charles, Louisiana. Dr. Fisher in turn sent plaintiff to Dr. George B. Briel, orthopedic physician and surgeon. Dr. Briel had plaintiff's back x-rayed and the findings were negative. Dr. Briel concluded that plaintiff was suffering from a back strain or torn ligament. He prescribed certain exercises to be taken by plaintiff but plaintiff did not return to Dr. Briel, but went to Dr. George P. Schneider where he has been going for treatment ever since.
"Dr. George P. Schneider, orthopedic specialist, had plaintiff under treatment for a long period of time and stated that plaintiff was progressing well.
"In answer to a question propounded by attorney for defendant on cross examination as to the extent of duration of disability of Newman, Dr. Schneider answered:
"`A. In view of Mr. Newman's status at this time I would prognosticate that in three to five months he should recover with no residual disability.'
"Dr. George B. Briel has examined plaintiff on several occasions since the first examination, specifically during May and July, 1955. He estimated that plaintiff should be well in from two to three months. He found no pathology in plaintiff's back, bones or joints.
"Dr. Edmond C. Campbell, orthopedic physician, examined plaintiff on four occasions on behalf of defendant. He felt that plaintiff suffered from a back strain but had recovered and was able to go to work on his last examination.
"Taking all of the expert testimony together it is evident that plaintiff has suffered a sprained back with no bone injury. Even plaintiff's doctor, Dr. Schneider, is of the opinion that plaintiff is recovering satisfactorily and that he should be well in from three to five months.
"Plaintiff was injured on January 2nd, 1954, and received compensation until September 5, 1954, inclusive.
"The Court is of the opinion that an award of compensation to plaintiff for an additional five month period would be fair and equitable."
In addition to the medical testimony, plaintiff testified that although his condition had improved that he felt he was unable to return to his former duties.
Counsel for plaintiff admitted the correctness of the findings of the lower court *235 as to the conclusions of the doctors who testified in the case with regard to the probable duration of plaintiff's disability but contend that it is "the same type of speculative estimate of future disability" as was found to exist in the Whiddon case. They argue that Dr. Briel stated that when he first saw the plaintiff he estimated he would be well in two months from the accident. Dr. Briel, when questioned as to what the length of plaintiff's disability would be from the time of his initial examination and assuming that plaintiff had followed his prescribed exercises, stated:
"Well, I usually give them about two months. If they have very much tightness of the back I usually give them about two months following the time I put them on the exercises in order to recover enough strength in their back to be able to return to their work."
Dr. Briel further stated that he did not know how much of the exercises the plaintiff took as the latter had told him that they hurt his back and shortly after placing him on such exercises the plaintiff developed an attack of influenza which laid him up. On his examination of May 9, 1955 he stated in his report: "I believe that if he would conscientiously help that within a period of three months he should be able to cure his disability." On July 29, 1955 Dr. Briel reexamined the plaintiff and from that examination testified as follows on the trial of the case: "* * * I feel that if he continues with this (meaning exercise and receiving heat treatments) within a period of two or three months he ought to be well able to do any type of work."
We interpret Dr. Briel's testimony to mean that had the plaintiff followed the prescribed exercises when he first examined him it was his opinion that he would have been well within two months, but it is clear from the testimony that plaintiff did not follow the exercises as he stated they caused him pain and he had developed a case of influenza. Bearing in mind the meaning of the word "probable," all of Dr. Briel's testimony, as well as the testimony of the other doctors in this case, goes into detail insofar as giving their reasons for the conclusion upon which the Trial Judge based his award of five months additional compensation. We do not interpret their testimony as being any more speculative than any event which logic and reason tells us will occur but which is, of course, not certain to occur.
It is therefore ordered that the judgment of the District Court be set aside and annulled and that the original judgment rendered herein be reinstated, to-wit: that judgment is hereby rendered in favor of Lee Newman and against Zurick General Accident & Liability Insurance Co. commencing January 2, 1954, and ending January 7, 1956 or 105 weeks, at $30 per week, with interest at the rate of 5% per annum on each overdue payment from its due date until paid subject to a credit for the period, January 2, 1954, to September 5, 1954, inclusive.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff and against defendant in the full and true sum of $641 with interest at the rate of 5% per annum from judicial demand until paid.
The fees of the experts, Drs. Edmond C. Campbell, George P. Schneider, and George B. Briel are fixed at $35 each and taxed as costs, all costs to be paid by defendant.
It is further ordered, adjudged and decreed that at the end of the five-month period the plaintiff's right to reopen this proceeding be reserved, even though the six-month period of LSA-R.S. 23:1331 has not expired.
TATE, Judge (concurring).
I concur with extremely grave doubts. I greatly fear our interpretation of the statutory provision will create a great hardship for the injured workingman who is plaintiff in this compensation suit.
*236 I am concurring rather than dissenting primarily because the right is reserved to this injured employee to reopen these proceedings immediately, in the event of continued disability, without being forced to wait until six months after this decree becomes final under LSA-R.S. 23:1331. This reservation might mitigate some (although by no means all) of the hardships which may be forced upon injured employees by basing judgments on medical guesses (prognoses) as to duration of disability which subsequently prove inaccurate.
Further, the opinion of this Court seems to hold that, with inclusion of this reservation, appellate courts will not disturb the trial court's sound exercise of its discretion under LSA-R.S. 23:1222 to award in a proper case compensation for "a fixed number of weeks to be based upon the probable duration of such disability"if such probable duration is less than six months, Ebarb v. Southern Industries Company, La.App. 1 Cir., 78 So.2d 553; Whiddon v. Concrete Pipe Products Co., La. App., 1 Cir., 78 So.2d 439; see Malone's Workmen's Compensation, Section 280.
A corollary of this holding is that we will not disturb the District Court's discretion in refusing to use medical guesses so as to fix arbitrarily the duration of disability.
It seems to me that in the sound exercise of its discretion, the more proper procedure to follow in cases like this where the medical evidenceinsofar as medical guesses can ever be evidence of future duration of disabilityindicates a probable recovery in less than the statutory period of six months, is for the District Court to allow the 300 weeks during disability provided for temporary total disability, but reserving the employer the right to re-open at the end of the maximum period of probable duration shown by the medical evidence.[1] Thus both the employer and employee would be protected against unfair impositions.
The object of this discretionary power, as well as of the discretionary power under LSA-R.S. 23:1222 to fix compensation during a period of limited duration, is to relieve an employer from the liability of paying workmen's compensation beyond the actual disability of the employee, if such disability is less than the six months within which normally may be obtained no modification of the decree awarding weekly compensation. No one can quarrel with this valid and fair objective.
On the other hand, when there is conflict in medical testimony as to duration of disability, the practically unanimous jurisprudence under the Act awards the maximum, whether the conflict be between permanent or temporary total disability, see e. g., Strother v. Standard Accident Insurance Company, La.App. 1 Cir., 63 So. 2d 484; permanent or temporary partial disability, see e. g., Vilce v. Travelers Ins. Co., La.App., 1 Cir., 25 So.2d 256; and between "fixed probable" (less than six months) temporary and indefinite (six months or more) temporary total disability, see e. g., Ebarb v. Southern Industries Company, La.App. 1 Cir., 78 So.2d 553; Whiddon v. Concrete Pipe Products Company, Inc., La.App. 1 Cir., 78 So.2d 439.
Few can quarrel with the objectives of such jurisprudence, in view of the paternal purposes of the Compensation Act, to put in case of doubt the duty to reopen upon the employer, rather than the employeewho otherwise might receive only periodic spurts of compensation, despite unquestioned continued disability. The employer *237 is of course protected from imposition by his statutory right to obtain a modification of the decree if the employee's condition improves after six months.
If the preferable procedure had been followed in this present case, of course, the defendants would probably have continued to pay compensation, reopening after five months only if the improvement it anticipated occurredrather than have taken a suspensive appeal which has the effect of depriving this injured workman and his family of income during these five months of admitted disability. Of course, defendants were obliged to cause these hardships in the present case by taking such an appeal, because otherwise they might have had to pay an extra month's compensation beyond what the law required of them.
But since, after all, we are here concerned not only with general rules, but with a specifically disabled workingman, Lee Newman, it seems to me advisable to see just what application of the ruling represented by the decree of this Court would have done and will do to this employee. At the trial on August 4, 1955, the consensus of the medical prognoses was that Lee Newman would recover within five months. (This trial, of course, is six and one-half months before the date our original opinion herein is rendered, March 20, 1956.)
Before the accident of January 4, 1954, this laboring man was supporting his wife and three children on wages averaging $70-90 per week. He had never before suffered an industrial accident or drawn workmen's compensation benefits. Compensation at the rate of $30 per week was discontinued to him on September 5, 1954. The reason appears to have been that his lumbosacral strain did not clear up according to the original prognosis, "probably due to the obesity and [also] posture of this man's back," testimony of Dr. Briel.
Now Dr. Briel, a most competent orthopedist, had initially examined Newman on behalf of defendant insurer on January 29, 1954, then again on February 17, 1954, February 23, 1954, and March 6, 1954. His initial prognosis of disability was two months additional disability beyond January, 1954. When Dr. Briel examined plaintiff a year later (on March 3, 1955), he estimated yet three month's further disability, although this was more than thirteen months after his wrong initial guess of only two months' disability And when Dr. Briel again saw plaintiff about five months later, on July 29, 1955 he estimated yet another 2-3 months more disability! I say this not in criticism of Dr. Briel, who appears to be an exceedingly competent and fair orthopedic witness, but just to demonstrate that medical prognoses are, after all, merely guesses.[2] Such guesses are based on the reaction of usual such injuries to time and treatment, when by the very fact of its unusual duration the present injury is not a usual injury of its type.
As to the accuracy of such medical prognostications, the other competent orthopedist *238 testifying, Dr. Schneider, frankly admitted, Tr-57:
"Q. Dr. Schneider, your prognosis of the duration of disability is somewhat speculative, wouldn't you say? A. Definitely.
"Q. In view of Mr. Newman's long period of disability, don't you think that any prognostication of duration of disability in his case would be more speculative in this case than ordinarily would be the situation? A. Following any injury in which there is a prolonged convalescence, the estimation of duration of disability usually is rather inaccurate."
In Lee Newman's case, if the courts had accepted the initial prognosis, Newman would have been limited to two months' compensation back in January of 1954, twenty months before the trial at which he unquestionably (under medical guesses) still was disabled for about five months longer after the trial.
Had Newman persisted and secured a reopening, he would have drawn compensation for only two and three months at a time, over the course of the 20 months before trial. The cost of doctors who examined him solely for purposes of trial, and not for treatment, is recoverable neither as medical expenses nor as court costs, see Cummings v. Albert, La.App., 86 So.2d 727, and of course would have been paid from the portion of his compensation remaining to him after payment of his 20% attorney's fees.
If his faith still survived that the Compensation Act provided a practical remedy to an injured workingman; and Newman had persisted to the point of the present trial; and we had been presented with this same appealthe effect of our decree rendered today, March 20, 1956, is to award him compensation ending some six or eight weeks ago. If a rehearing or writs of review are sought, this judgment will not be final for yet two or three months more. If Newman is still disabled, he can then petition to reopen again, apparently produce the same testimony, receive a similar limited judgment, which if appealed will again force himself and his family to be without income or sustenance for another considerable period of time.
It is hard for me to believe that the remedy envisioned by the Compensation Act should be so interpreted as to cause such results, and it is therefore with great doubt that I subscribe to the decree herein.
It seems to me that the present case falls very closely within the situation presented to us by Ebarb v. Southern Industries Company, 78 So.2d 553, wherein we stated at page 559, Judge Ellis the organ of the court:
"From the facts in this case we can not definitely fix the possible [probable] duration of plaintiff's disability, although the testimony is strongly in favor of the finding of the District Court, yet the doctors were wrong in their estimate, for plaintiff was still disabled in the opinion of these same doctors on the date of the trial which exceeded the time limit fixed by them upon their first examination of plaintiff. However, all of the doctors were positive in their testimony that plaintiff's condition is temporary and not permanent and therefore should come under LSA-R.S. 23:1221(1)."
Thus in the Ebarb case, we held that doctors' prognostications of duration do not sufficiently prove "probable" duration when such prognostications of an individual's recovery have earlier been so inaccurate as to indicate their inapplicability to the case in question. The present is distinguished from the Ebarb case only because there is no proof as to Dr. Schneider's earlier prognostications. Since Dr. Briel recommended a more rigorous regime than Dr. Schneider, perhaps the record can be construed to indicate that Newman's failure to recover as promptly as predicted by Dr. Briel results, not from mistaken estimations by him, but from Dr. Schneider's less painful and more conservative treatment. *239 In other words, the record might be interpreted to indicate that Newman is progressing toward full cure under Dr. Schneider's treatment according to Dr. Schneider's schedule.
I may add that should Newman present to us with his application for rehearing within the legal delay period medical reports indicating continued disability, under a policy we have previously followed the proceedings would be remanded for additional medical testimony, Vilce v. Travelers Ins. Co., La.App. 1 Cir., 18 So. 2d 243, approved by implication in Wade v. Calcasieu Paper Company, Inc., 229 La. 702, 86 So.2d 540; see also Betz v. Travelers Insurance Company, La.App. 1 Cir., 68 So.2d 666; Barnes v. American Mutual Liability Insurance Company, La. App. 1 Cir., 62 So.2d 843; McClung v. Delta Shipbuilding Company, La.App., 33 So.2d 438. This of course is one more reason why the more appropriate decree herein would be to allow compensation during disability, not to exceed 300 weeks, reserving unto defendants-appellants the right to reopen any time after five months from date of trial.
For the reasons and with the reservations above assigned, I presently subscribe to our decree herein.

On Application for Rehearing.
LOTTINGER, Judge.
On application for rehearing counsel for plaintiff filed an alternative motion that this case be remanded to the lower Court for the taking of evidence on the question of the duration of Mr. Newman's disability and the estimates thereof. In the application and alternative motion he states as follows:
"The crux of this case revolves around the question of how much probative value should be given to medical estimates of duration of disability. At the original trial of this case, plaintiff proved that Dr. Briel had made several prior erroneous estimates of Mr. Newman's disability. Dr. Schneider, on the other hand, testified that such estimates are definitely speculative, and that, moreover, they are even more speculative in cases such as that of Mr. Newman, in which there has been a prolonged convalescence. We had though this evidence would have been easily sufficient proof of the probable inaccuracy of the estimates of disability made by Drs. Briel and Schneider at the trial of this case. Perhaps in not having more fully developed the evidence of prior estimates, we should assume some responsibility for your decision. However, in an effort to more fully develop the history of Dr. Schneider's prognoses in this case, we have rounded up originals of all of Dr. Schneider's previous written reports, and we quote herewith from excerpts of those reports, as follows:
"As of March 20, 1954, Dr. Schneider made the following prognosis:
"`I feel that under a continued conservative routine of treatment he should respond satisfactorily and be able to resume active gainful employment in a period of 3 to 4 months with no residual disability. During the period of convalescence I feel that he will be totally disabled from resuming the type of heavy manual labor in which he was engaged at the time of his initial injury.'
"As of June 14, 1954, Dr. Schneider made the following prognosis:
"`My impression of this patient at this time following re-examination is that he is still suffering from a symptomatic tear of the fifth lumbar interspinous ligament and that he is still totally disabled from resuming his previous type of heavy manual labor. I therefore feel that his disability period will extend approximately another three months, barring any complicating factors, but that eventual full recovery should take place with no residual disability.' *240 "As of November 23, 1954, Dr. Schneider made the following prognosis:
"`* * * it is my impression that in spite of an expected completion of convalescence by this date that he is not completely convalesced and this period will probably extend another 3 months.'
"As of January 4, 1954, Dr. Schneider made the following prognosis:
"`I feel that his disability period may be prolonged somewhat over my previous prognostication and will probably be at least another 8 to 12 weeks before he is able to resume his usual type of employment. I feel, however, at the end of that time that he should be able to resume the type of employment in which he was engaged at the time of his injury with no residual disability.'
"As of May 23, 1955, Dr. Schneider made the following prognosis:
"`I do not feel that there is any doubt but Mr. Newman is considerably improved as compared to, let us say two or three months ago but I feel that his convalescence will probably continue at least another three months in spite of my previous impression to the contrary. I feel that once satisfactory resolution has taken place that he should be able to resume his previous type of gainful employment without any evidence of residual disability.'
"The original reports from which these excerpts have been taken are attached hereto and marked Appellate Exhibits `A', `B', `C', `D', and `E', respectively. At the trial of Mr. Newman's case, Your Honors will recall that Dr. Schneider found Mr. Newman disabled and predicted he would be well in from three to five months. Since the trial, Dr. Schneider has continued to treat Mr. Newman, and as you may see from his most recent report, dated March 29, 1956, the original of which is attached hereto as Appellate Exhibit `F', Mr. Newman's disability has endured beyond the five months last estimated by Dr. Schneider, and that Mr. Newman was, as of the date of this report, still disabled. The remainder of the report is self-explanatory.
"A review of the above referred to prognoses made by Dr. Schneider discloses that every single prior estimate made by him has been proven inaccurate."
Exhibit F which is attached to the motion and not quoted hereinabove is partly as follows:
"Since my previous communication to you Mr. Newman has continued under my care and has been examined on repeated occasions and seen at this office for further follow-up at intervals. He was last seen at this office on March 26, 1956, at which time he stated that he had been increasing his activity and doing quite well except for some soreness in his low back. He stated he had reached the stage where he could keep his brace off when about the house for as long as the entire day and did quite well without it as long as he did not attempt any prolonged walking or any lifting. He still showed findings of localized tenderness over the fifth lumbar interspinous ligament and the patient stated that as a result of examination this was the only place where he had discomfort.
"In my previous letters to you I have made repeated prognostications as to duration of disability in this particular patient and have found after further follow-up that they have not been accurate. We find a certain percentage of individuals in whom convalescence is prolonged for a longer period of time than we usually expect and I feel that Mr. Newman falls in this category. There is no doubt in my mind about Mr. Newman's continuing to be disabled but I feel that he is slowly but surely progressing toward rehabiliation and that recovery should take *241 place with no residual disability. I feel that his disability period is indefinite as of this date but that I would again prognosticate at this time that Mr. Newman's disability period will probably extend at least another 6 months. I do not feel that there will be any residual disability following his recovery and that he should be able to resume his previous type of gainful employment."
It is to be noted that this report addressed to counsel for plaintiff is dated March 29, 1956 and signed by Dr. George P. Schneider. As a matter of fact, all of the Exhibits hereinabove referred to are the original reports and signed by the said doctor.
It is strange that the information contained in said reports prior to Exhibit F was not brought out during the trial in the examination of Dr. Schneider, and we feel reasonably sure that if same had been brought out as evidence that this case would fall within the rule as enunciated in the case of Ebarb v. Southern Industries Company, La.App., 78 So.2d 553, 554. Be that as it may however, the most definite testimony that Dr. Schneider gave as a witness in this case is as found on Page 54 of the transcript which is as follows:
"Q. What is your best estimate as of this time as to how much longer it will be before Mr. Newman has completely recovered and is able to go back doing physical labor? A. In view of Mr. Newman's status at this time I would prognosticate that in three to five months he should recover with no residual disability.
"Q. And would be able to go back to the same type of work he was doing before this accident? A. That is correct."
According to Dr. Schneider's testimony as found in the record, the lower Court originally extended the compensation payments to January 7, 1956. However, it is pertinent to note that Exhibit F is dated March 29, 1956 and a time extending beyond the date originally stated that this plaintiff would be physically able to resume his duties.
According to Article 906 of the Code of Practice and according to the cases of Vilce v. Travelers Insurance Co., La.App., 18 So.2d 243 and Betz v. Travelers Insurance Co., La.App., 68 So.2d 666:
"If the court shall think it not possible to pronounce definitely on the cause, in the state in which it is, either because the parties have failed to adduce the necessary testimony, or because the inferior court refuse to receive it, or otherwise, it may, according to circumstances, remand the cause to the lower court, with instructions as to the testimony which it shall receive, to the end that it may decide according to law."
In view of the fact that this is a workmen's compensation case where the court is called upon to apply liberal rules of procedure, and in further view of the fact of the information attached to the alternative motion for remand, we are of the opinion that this case should be remanded to the lower Court so that substantial justice can be rendered.
For the reasons stated, it is ordered that the original judgment and decree herein handed down on March 20, 1956 be and the same is hereby voided, set aside and annulled and it is further ordered that this case be now remanded to the Fourteenth Judicial District Court of the State of Louisiana, in and for the Parish of Calcasieu, for the purpose of having taken and placed in the record all available testimony as may be produced by either side regarding the plaintiff's ability or disability, as well as duration of said disability, to do and perform hard manual labor, and that this case be disposed of according to law.
All costs of this present appeal are to be paid by the defendant and all other costs to abide the final determination of the suit. The defendant is hereby granted the right to apply for a rehearing from this decree rendered herein.
Case remanded to lower court.
NOTES
[1] Our opinion herein recognizes the discretionary power of our District Courts to permit to either party in proper circumstances the reservation of the right to reopen the proceedings within less than the six months provided by LSA-R.S. 23:1331, see also dicta to same effect, Rogers v. Thermatonic Carbon Co., 157 La. 193, at page 198, 102 So. 304 (Contra: Mays v. Allison & Langston Supply Co., 5 La.App. 686.). The statutory provision simply provides that courts shall after six months permit the re-opening of proceedings. As our opinion herein holds, this mandatory duty does not exclude the exercise of a discretionary power to permit reopening in less than six months.
[2] Cf. Mr. Justice Odom's disapproval of the use of such "bald guesses" and "speculation" to fix a "definite period of disability", when serving as organ of the Second Circuit, O'Donnell v. Fortuna Oil Company, 2 La.App. 462, at page 464:

"The admission that plaintiff's recovery within a certain length of time is only `probable' and the statement that according to the law of probabilities he will recover the full use of his hand within five months from the date of the trial, is absolutely fatal to counsel's contention.
"The court must not speculate as to how long a person will be disabled. The greatest experts in the land cannot tell how long it will take a wound to heal. They can no more do that than a surgeon can tell whether an operation will prove fatal or be a success. Any opinion which might be given by a physician as to how long a patient will be disabled from a certain wound or condition of a member of the body would necessarily be speculative. An expert might be able to guess more accurately than a layman, but his opinion would be a guess after all." (Italics mine.)