TATE, Judge.
This suit for workmen’s compensation benefits was dismissed after trial on the merits on the ground that it was not proven plaintiff Halphen had any residual disability resulting from the accident of January 8, 1955. Following plaintiff’s appeal; he died; his widow and children were substituted as parties plaintiff by stipulation of counsel.
In the course of his employment, Halphen was involved in an automobile accident- *913 He was thrown forward, knocking his knees against the dashboard, his chest against the steering wheel, allegedly suffering a flexing injury of the spine, and also shock. At this time, Halphen was 65 years of age, and had been under a physician’s care for a cardiac condition for approximately eight years. (It is not a question of the present suit whether the shock aggravated the cardiac condition.)
The accident is admitted. There is no serious dispute either that at the time of the trial Halphen was totally disabled to perform the duties of chief engineer by an arthritic condition of the knees and spine.
According to Dr. James 'Gilly, orthopedic specialist testifying on behalf of plaintiff, Halphen had a loss of flexion in his knees of approximately 20%, and in his spine of approximately 70%, due to arthritic changes; consequently he could not climb stairs or move about without disabling pain.
Dr. W. L. Meuleman, orthopedic specialist testifying on behalf of defendant, found x-ray evidence of arthritic changes, but felt they pre-existed the injury and were compatible with Halphen’s age. He found some residual disability (Halphen’s knees were still black and blue at his examination five months after the accident), but felt that it was not as serious as that of which plaintiff complained.
The factual question presented was whether or not the disabling painful condition of plaintiff’s back and knees, accepting his complaints as genuine, resulted from an aggravation or exaggeration of the pre-existing condition normal to' Hal-phen’s age. The doctors also agree that from the x-rays, they were unable to determine whether such condition was painful and to some degree had to some extent to accept the patient’s estimates of pain, and that individual thresholds of pain vary greatly. Dr. Gilly found the loss of motion in the spine and knees to be an objective symptom.
The factual point upon which the decision below hinged was this: Both doctors agree that if the present disabling condition resulted from, the accident of January 8th, rather than from the normal process of age, the' pain should have been acutely activated immediately following the accident — that is, that it would not subside following the accident, only to commence again three or four months later.
The District Court accepted Mr, Hal-phen’s rather boastful testimony that right up to' the trial (nine months after .the accident) he had been attempting to get work; and therefore felt his complaints could not be as serious as those of which he complained to the doctors. It further accepted the testimony of Dr. Morrogh, plaintiff’s personal physician, that although he had seen Halphen on February' 1, 1955, following the accident of January 8, 1955, Halphen had not complained to him of the back and knee injury until May 17, 1955.
The District Court also relied to a great extent upon the testimony that plaintiff had seen his employer’s officers twice during the month of January, 1955, and had gotten three days’ extra pay owing and had attempted to be re-employed for the 1956 season (some eight months off), without mention of his residual injuries or his compensation claim. (This incident, as well as his attempting to secure work during February 1955 for the 1956 season, Halphen explains by his hope that the condition would pass off or be cured with time.)
Upon rendition of judgment, plaintiff applied for a re-hearing, attaching 12 photostatic exhibits of prescriptions and doctor’s reports, which tend to show:
1. That ’plaintiff’s physician, Dr. Earl Morrogh, was in grave error and mistaken when he testified he had' only treated plaintiff once between January 8, 1955, and May 17, 1955, in fact having examined and treated him almost biweekly through this period, giving written prescriptions on *914 several occasions (attached to the application for rehearing);
2. That another home physician, Dr. Robert Morrow, had also treated plaintiff in the interval, on February 10, 1955 and on March 19, 1955 and had diagnosed the osteoarthritis of the back and legs;
3. That Dr. Bourgeois, who at.his deposition on the trial had been unable to recall any knee contusions or back injuries as attending physician right after the accident, had in fact given plaintiff' a prescription to apply to cuts received in the accident;
4. That the electrocardiogram taken by Dr. Bourgeois immediately after the accident had been located after the trial and should be introduced.
Plaintiff further offered to produce many witnesses to the effect that Halphen had only sought further work during February, 1955, and not so much for himself as for his sons (three of whom generally worked with him as a crew), and had never been able after that to do so. This would corroborate the positive testimony of Hal-phen’s son at the trial, which the District Court apparently discounted in view of the old father’s prideful boast on the stand that he was still seeking work (and still able to do the work, if he didn’t get excited).
As excuse for plaintiff’s failure to obtain such evidence prior to judgment, his counsel points out that the testimony of Dr. Morrogh (contrary to that of his client) took him by surprise, but that he had no reason to believe it mistaken until after the judgment, when a search with the family produced documentary evidence that Dr. Morrogh had indeed seen Mr. Hal-phen regularly during the period (as Hal-phen testified) rather than only once as the doctor testified in error (Tr-131.)
Principally, however, counsel points out the uncontradicted medical testimony that, at least after the accident, the old man was rapidly deteriorating in memory and mental faculties'and becoming “very senile” (Tr-97, 98, 102), and therefore both that his response on the stand was ’sometimes inaccurate, and further that his assistance to his counsel in preparation of the case was limited.. Thus, counsel urges, it was only after the trial court placed such great stress upon the period between January 8, 1955, and May 17,, 1955, that searching examination of the old man’s effects and cooperation with his family brought to light evidence that Mr. Halphen had forgotten about.'
That such evidence would be of crucial importance to the District Court’s resolution of the factual questions of whether Halphen’s knee and back disability were related to the accident of January 8, 1955, is shown by the positive testimony of Dr. Gilly that if the complaints started following the accident, the arthritic exaggeration and disability related to the accident; but if not until May 17th, then were not causally connected with the accident. The District Court could only have discounted this positive testimony by its acceptance of Dr. Morrogh’s testimony ‘that he had not seen Halphen until May 17, 1955, or four months after the accident (except for one cardiac interview in February), at which time Halphen for the first time complained of the knees and back. Further, Dr. Meuleman testified that the accident could have activated the pre-ex-isting arthritic condition (Tr-87), but relied to some extent upon an assumption that it had not developed “acute hurt soon after the accident” (Tr-81-82.)
In view of the uncontradicted testimony that Halphen had never suffered knee and back complaints prior to the accident, if the accident is related to the exaggeration or aggravation or activation of a pre-existing condition into a painfully disabling state, then of course Halphen’s injury is compensable. See Woodfin v. Tuboscope Co., 91 So.2d 902, this day rendered by this Court.
*915 In urging that a new trial should not be granted on such grounds, defendants-appellees chiefly rely on the well settled jurisprudence that a new trial will not be granted for the purpose of producing allegedly new evidence which was, however, available to counsel or which should with reasonable diligence have been available to counsel. However, the jurisprudence cited all involves proceedings other than workmen’s compensation cases.
The compensation act provides that: “The court shall not be bound by technical rules of evidence or procedure other than as herein provided,” LSA-R.S. 23 :- 1317. A compensation suit particularly is not a game of counsel, but a serious effort of judicial administration to determine whether or not injury was sustained by industrial accident, and whether or not residual disability resulted therefrom. When the Court below was misled in its conclusions by reliance upon erroneous testimony, or testimony which it is alleged to have been erroneous upon allegations supported by a tender of probable merit, neither it nor the present court is required to stand by, helpless, because technically' — had counsel anticipated the mistaken testimony — the disproof existed somewhere; disregarded as insignificant and significant only because of the unanticipated complications produced by the evidence, and the perhaps disproportionate importance attached to the boasts of the senile plaintiff; the availability and importance thereof withheld from counsel by . the senility of plaintiff.
In Newman v. Zurich General Accident & Liability Insurance Co., La.App. 1 Cir., 87 So.2d 230, at page 241, this Court through Judge Lottinger summarized the liberal procedural rule which applies in compensation cases, when recovery may be denied an injured workingman unless some evidence preferred after the trial, and even for the first time on appeal, is admitted:
“According to Article 906 of the Code of Practice and according to the cases of Vilce v. Travelers Insurance Co., La.App., 18 So.2d 243, and Betz v. Travelers Insurance Co., La.App., 68 So.2d 666:
“ ‘If the court shall think it not possible to pronounce definitely on the cause, in the state in which it is, either because the parties have failed to adduce the necessary testimony, or because the inferior court refuse tc receive it, or otherwise, it may, according to circumstances, remand the cause to the lower court, with instructions as to the testimony which it shall receive, to the end that it may decide according to law.’ ”
We think that it is very material for the Court to know whether or not Halphen complained to physicians of (or received treatment or prescriptions relative to) the conditions of his knees and back between the accident of January 8, 1955 and May 17, 1955 (when, according to the present record and the allegedly mistaken testimony of Dr. Earl Morrogh, he for the first time sought medical aid for such condition). For what corroboration it may provide, it may also be material to learn whether Hal-phen sought work only in the month of February, 1955, rather than right up to the trial. Further, the opinions of the orthopedists who testified herein may be material as recast in the light of such additional evidence.
For the above and foregoing reasons, the judgment below is avoided and annulled, and these proceedings are remanded to the District Court for the limited purposes of admitting evidence as set forth in the foregoing paragraph and in order to pronounce upon any relation ■ existing between Halphen’s disability at time of the trial below and the accident of January 8, 1955, and to dispose of th'is case according to law.
Case remanded to lower court.