TATE, Judge
(concurring).
It is with some reservations, set forth below, that the writer concurs in the majority opinion.
3STot only the three specialists but also 'the attending physician (Dr. Dupre) initially concluded that the claimant was free of residual disability by July 30th. In fact, Dr. Dupre wrote to the insurer on September 15, 1956, and stated that he presumed the claimant had recovered because he had not seen him for several months.
However, on September 24th, nine days later, the claimant returned to Dr. Dupre for treatment, with complaints of continued back pain. Dr. Dupre is the only physician who examined and treated the claimant between July 30th and the trial in February of 1957, and it was this physician’s positive opinion that the claimant was disabled by these back pains, although the doctor admitted frankly that there were no objective symptoms of disability and that ultimately his opinion of disability was based upon his acceptance as truthful of the plaintiff’s subjective complaints of pain. Two of the three specialists, however, conceded that residual pain could persist in the patient without producing objective symptoms.
But, perhaps through oversight, this physician’s testimony did not specifically relate the continued complaints of pain following July 30th to the initial industrial accident. Although it is implied by this testimony that the present disability is a residual or prolongation of the original disability, the testimony can also be interpreted as stating that the subsequent disability resulted rather from the claimant’s extremely poor posture and certain congenital abnormalities. I therefore concur in the majority opinion limiting compensation to July 30th.
But I concur with some doubt. The lay and medical testimony indicates that this 20-year-old claimant worked at hard manual labor for several years before the accident without any complaint of back pain, despite these previously nonsymptomatic physical defects. Since these complaints first began at the time of the accident and have continued or recurred thereafter upon attempts to return to gainful employment or to perform heavier household duties, it is difficult not to believe, as a common sense matter and aside from the lack of specific medical testimony to such effect, that the trauma did not precipitate or contribute to the present disability in large part caused by previously latent physical weaknesses, which defects the medical testimony does indicate would have a tendency to prolong disability resulting from a lumbo-sacral sprain or strain.
Judge (now Mr. Justice) McCaleb once summarized our jurisprudence as follows: “[T]he courts have adopted the view that, where a person who enjoys good health suffers an accident and within a short time thereafter a dormant pre-existing illness or old injury disconnected with the accident flares up or becomes active, it will be presumed that the flare up was not a coincidence and that it was set in motion as a direct result of the accident. And it is sufficient for the plaintiff, in order to cast the burden of proof upon the defendant, to show by medical testimony that there is a reasonable possibility that the result claimed for did happen.” Pepper v. Toye Bros. Yellow Cab Co., La.App.Orl., 198 So. 177, 182. See also Blanchard v. Travelers Insurance Company, La.App. 1 Cir., 121 So.2d 515.
We must also take into consideration that in a back strain injury the objective symptoms of the continued disability may become obscure following prolonged rest of the injured back. See e. g. Shaw v. F. & C. Engineering Company, La.App. 1 Cir., 120 So.2d 523, certiorari denied. But on the other hand the medical evidence in the present record does not reflect that any prolongation of the initial disability because of the plaintiff’s latent defects should have persisted from 1957, when the trial took place, to the present time, almost four *393 years later. (In fairness to the trial court, it should probably be added that the minutes reflect that most of the three year delay between trial and decision in the lower court was caused by the failure of busy counsel to file briefs in the interval.)
Under the evidence shown by the present record I do not disagree with the majority’s refusal to award compensation for total and continued disability to date, even though the lack of evidence as to a medical causal relationship of the initial injury to the continued disability at the trial in early 1957 may and most probably is an inadvertent omission from the testimony of the attending physician.
This decision to concur is also in part influenced by the feeling that substantial injustice may be avoided, should the facts so warrant, by application of the special paternalistic rule in workmen’s compensation cases that, to prevent a truly injured workingman from forever losing his day in court, the appeal may be remanded for further evidence, if with appropriate prayers in the application for rehearing the appellate court is presented with post-appeal medical reports indicating a continued or recurrent work-caused disability persisting beyond the date to which the court’s original opinion allowed compensation. See, e. g., Newman v. Zurich General Accident Liability Ins. Co., La.App. 1 Cir., 87 So.2d 230; Vilce v. Travelers Ins. Co., La.App. 1 Cir., 18 So.2d 243, approved by implication in Wade v. Calcasieu Paper Company, Inc., 229 La. 702, 86 So.2d 540; Betz v. Travelers Insurance Company, La.App. 1 Cir., 68 So.2d 666; Barnes v. American Mutual Liability Insurance Company, La.App. 1 Cir., 62 So.2d 843; McClung v. Delta Shipbuilding Company, La.App., 33 So.2d 438. See also Halphen v. St. Mary Sugar Cooperative, La.App. 1 Cir., 91 So.2d 912.
For the foregoing reasons, the writer concurs in the majority opinion.